EPHRAIM J. SWANN and GWEN W. SWANN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Swann v. Commissioner
Docket No. 6047-78.
United States Tax Court
T.C. Memo 1981-236; 1981 Tax Ct. Memo LEXIS 507; 41 T.C.M. (CCH) 1478; T.C.M. (RIA) 81236; May 12, 1981. Ephraim J. Swann, pro se. John C. Meaney, for the respondent. FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent determined deficiencies in petitioners' Federal income taxes and additions to tax as follows: Addition
Year
Deficiency
Sec. 6653(a) [1]
1975
$ 1,011.00
$ 50.55
1976
2,134.00
106.70
At trial, the Court granted respondent's motion to dismiss the petition for lack of prosecution as to both the deficiencies and the additions to tax set forth above. The only remaining issue is whether damages should be awarded to the United States under section 6673 on the ground these proceedings were instituted merely for delay. FINDINGS OF FACT *508 Petitioners, Ephraim J. Swann and Gwen W. Swann, husband and wife, lived in Jerome, Idaho, when they filed the petition in this case. Petitioner Ephraim J. Swann (hereinafter husband) is a teacher at the Jerome High School. Gwen W. Swann works as a grocery clerk for Safeway Stores, Inc. Husband is a past member of the board of directors of the Posse Comitatus, a "tax protest" organization. Husband does not like paying taxes and professes the belief that the taxation of wages is unconstitutional despite the Sixteenth Amendment. Husband makes his constitutional objections to Federal income taxation known to his students and to others in his community. Husband is a college graduate, and he is aware that this and other Courts have repeatedly rejected the so-called "constitutional" arguments of "tax protestors." On petitioners' 1975 Federal income tax return, they claimed $ 4,955 of miscellaneous itemized deductions whose general theme seems to be unreimbursed employee expenses incurred in husband's trade or business of teaching high school. [2] On their 1976 return, petitioners' claimed miscellaneous deductions of $ 3,465; other trade or business expenses totaling $ 5,226; and *509 medical expense deductions of $ 1.026. [3]
*510 In petitioners' trial memorandum filed with the Court on December 1, 1980, husband described his audit as follows: In July 1977 I was scheduled to go to the Twin Falls Federal I.R.S. office for an audit of my 1975-76 tax records. I had to have the date changed a couple of times, once because of business and once because of health reasons. Finally in August I made it to the Twin Falls office for an audit with a young college graduate named John Peterson. * * * In talking with this individual, Auditor John Peterson, he asked me several questions to verify my identity. I asked him several questions to verify that he was a trained I.R.S. auditor. I proceeded to take my papers out of my briefcase and place them on his desk during this discussion; then it hit me! I gained the impression from him that he was my Lord and Master and I was his servant -- to do exactly as he said in regard to the audit procedures. So I reversed my procedure and started to put my papers back into my briefcase, pick it up and head for the door. He then asked "what are you doing?" I answered that as far as I was concerned the audit was over, that under my rights as a United States citizen and the *511 5th Amendment to the U.S. Constitution, I didn't have to show him anything. (At that time I had been teaching a government class in high school for the past nine years). He then stated "if I don't see your tax records today to verify your deductions, I will disallow all of your deductions." I thanked him, reminded him of my constitutional rights and left. Following this experience, husband filed a "formal protest to your request for audit," citing the 4th, 5th, 6th, 7th, 8th, and 14th Amendments to the Constitution, with the Twin Falls, Idaho, office of the Internal Revenue Service. In his statutory notice for 1975 and 1976, respondent disallowed petitioners' miscellaneous and other deductions set forth above. In their petition, as amended, petitioners rely solely on their constitutional rights not to show their private papers to an auditor of the Internal Revenue Service. This case was originally scheduled for the Boise, Idaho, session of this Court held on September 24, 1979. In chambers, Judge Dawson suggested to petitioners that they try to substantiate their deductions, since their "constitutional" arguments were wholly without merit. Thereafter, in open court, husband *512 agreed to meet with respondent's agents, to produce his records, and to try to settle the case, the trial of which was continued on that basis. However, husband's subsequent interview with respondent's agents was not fruitful. During the trial of this case at Boise, Idaho, on December 1, 1980, the Court repeatedly warned petitioner his "constitutional" arguments were bootless. Finally, the following colloquy took place: THE COURT: * * * I told you that all of these arguments have been answered before. They're frivolous and there's no merit to them. They've been disposed of. Now I am asking you if you want to address--I am willing to pass on the legal issues right now--are you willing to address the substantive issues in this case, to wit the business expense and the deductions that have been disallowed? "Yes" or "No"? MR. SWANN: No. THE COURT. All right, fine. OPINION We granted respondent's motion to dismiss the petition for lack of prosecution from the bench. Rule 123(b), Tax Court Rules of Practice and Procedure; Freedson v. Commissioner, 565 F.2d 954 (5th Cir. 1978), affg. 67 T.C. 931 (1977). [4]
*513 The remaining issue is whether damages should be awarded to the United States under section 6673. Section 6673 provides: Whenever it appears to the Tax Court that proceedings before it have been instituted by the taxpayer merely for delay, damages in an amount not in excess of $ 500 shall be awarded to the United States by the Tax Court in its decision. Damages so awarded shall be assessed at the same time as the deficiency and shall be paid upon notice and demand from the Secretary and shall be collected as a part of the tax. This section of the Code was first enacted in 1926 to serve as a deterent against the wasteful and purposeless litigation of frivolous issues and to prevent proceedings before the Court, then the Board of Tax Appeals, from being initiated merely to delay the payment of taxes. Wilkinson v. Commissioner, 71 T.C. 633 (1979). All of the issues raised by petitioners throughout these proceedings have been held to be "far-fetched and frivolous" for more than a quarter of a century, as petitioners are well aware. See Porth v. Brodrick, 214 F.2d 925, 926 (10th Cir. 1954); United States v. Rickman, 47 AFTR2d 81-379 (10th Cir. 1980); *514 United States v. Johnson, 577 F.2d 1304 (5th Cir. 1978); Hatfield v. Commissioner, 68 T.C. 895 (1977). Accordingly, it appears to us that petitioners have instituted these proceedings merely for delay. Wilkinson v. Commissioner, 71 T.C. at 642-643. We therefore award damages to the United States in this case of $ 500. To reflect the foregoing, An appropriate order and decision will be entered. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended.↩
2. Representative examples, numbered as they were on petitioners' return, include: ↩
3. Depreciation of Office Equipment: Desk,
Chairs, Filing Cabinet, Magazine Racks, Typewriter,
Calculator, Total Value $ 565, SL Depreciation 10%
$ 56.50
5. TV Cable expense: to keep current on local,
state, national and International events (2 government
classes have current events Test or Quiz each week.
Cable Cost $ 6.00 per month. (Don't need Cable for
family, for family TV programming, pick up local
station
$ 72.00
12. Travel expenses to take slides to be used in
following classes that I teach; Geography, History,
Anthropology, Government & Geology classes. 880 miles
at 15" per mile = $ 132.00 8 meals for above trips at
$ 2.25 = $ 18.00
$ 150.00
14. Dues to National Rifle Association and Local
Gun Club. Assigned by School as NRA Jr. Gun
Club Advisor;
NRA requires that club leader be an NRA Member. Local
Gun club helps sponsor the School Gun Club
$ 9.50
29. Joined Mineral of the Month Club to obtain
Mineral Samples for student observation, that are not
available in the local area
$ 24.00
3. Corrected for matematical errors.↩
4. See Crowder v. Commissioner, T.C. Memo. 1978-273↩.