T.C. Memo. 1997-225


UNITED STATES TAX COURT


MARY K. FISHER AND CHARLES F. PATTERSON, ET AL., Petitioners[1] <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 6382-95,                    Filed May 12, 1997.
          6383-95,
          6384-95.


        Charles F. Patterson, pro se.

        <u>John E. Becker, Jr.</u>, for respondent.


        MEMORANDUM FINDINGS OF FACT AND OPINION

        PANUTHOS, <u>Chief Special Trial Judge</u>:  These consolidated

cases were heard pursuant to the provisions of section

––––––––––––––––

        [1]  The following cases are consolidated herewith:  Charles
F. Patterson, docket No. 6383-95, and Mary K. Fisher, docket No.
6384-95.

7443A(b)(3) and Rules 180, 181, and 182.[2]  Respondent, in three separate notices of deficiency, determined deficiencies in petitioners' Federal income taxes and accuracy-related penalties as follows:

| | | | | Accuracy-Related Penalties | |
| Docket No. | Year | Petitioner | Deficiency | Sec. 6662(c) | Sec. 6662(d) |
| 6382-95 | 1992 | Mary K. Fisher and Charles F. Patterson | $7,337 | $1,467.00 | --- |
| 6383-95 | 1991 | Charles F. Patterson | 1,684 | 336.80 | --- |
| 6384-95 | 1991 | Mary K. Fisher | 6,630 | --- | $1,326 |

Petitioners filed individual Federal income tax returns for 1991 and a joint return for 1992.[3]  With respect to the 1991 taxable year, petitioners evenly divided items of income and expense, pertaining to their horse- and dog-breeding activities, on their respective Schedules C.  After concessions,[4] the issues remaining

---

[2]  All section references are to the Internal Revenue Code as amended, unless otherwise indicated.  All Rule references are to the Tax Court Rules of Practice and Procedure.

[3]  Petitioners were married in 1992.

[4]  With respect to 1991, respondent has conceded the following issues:  (1) That petitioners' horse-breeding activity was an activity engaged in for a profit; (2) that petitioner Mary K. Fisher is entitled to deduct $18,622 and petitioner Charles F. Patterson is entitled to deduct $18,621 of the Schedule C expenses claimed on their respective returns, including claimed depreciation expenses on each return in the amount of $1,405; (3) that petitioner Mary K. Fisher did not have unreported income in the amount of $5,539; (4) that petitioner Charles F. Patterson did not have unreported income in the amount of $16,200; (5) that petitioner Mary K. Fisher is not liable for the accuracy-related penalty under sec. 6662(d); and (6) that petitioner Charles F. Patterson is not liable for the accuracy-related penalty under sec. 6662(c).  Petitioners have each conceded that they are not entitled to claimed depreciation expenses in the amount of $900.
(continued...)

for decision are: (1) Whether we have jurisdiction to resolve the issue of whether petitioner Charles F. Patterson (hereinafter sometimes referred to as petitioner) is entitled to a net operating loss carryover (NOL) in the amount of $113,259 claimed on his 1991 return, and purportedly attributable to the tax years 1988 through 1990; (2) whether, if we do have jurisdiction over the issue, petitioner is entitled to the claimed NOL carryover; (3) whether petitioners are entitled to claimed casualty and theft loss deductions attributable to their horse- and dog-breeding activities in the total amount of $4,150 for the tax year 1991;[5] (4) whether petitioners are entitled to claim amortization deductions for startup expenses attributable to their horse-breeding activity in the total amount of $4,074 for each of the tax years 1991 and 1992; (5) whether petitioners are entitled to claimed depreciation expenses attributable to their horse-breeding activity in the total amount of $9,900 for the tax

---

[4](...continued)
With respect to 1992, respondent has conceded the following issues: (1) That petitioners' horse-breeding activity was an activity engaged in for a profit; (2) that petitioners are entitled to $33,525 of the Schedule C expenses claimed on their return, including depreciation expenses in the amount of $5,622; (3) that petitioners did not receive unreported income in the amount of $17,530; and (4) that petitioners are not liable for the accuracy-related penalty under sec. 6662(c). Petitioners concede that they are not entitled to $155 of the depreciation expenses claimed on their return. Petitioners, however, claim additional depreciation expenses in the amount of $899.

[5] This represents the combined amounts claimed on petitioners' individually filed returns.

year 1991, and in the amount of $3,288 for the tax year 1992;[6]
and (6) whether petitioners are entitled to a claimed deduction
for office expenses in the amount of $958 for the tax year 1992,
attributable to their horse-breeding activity.

### FINDINGS OF FACT

Some of the facts have been stipulated, and they are so
found.  The stipulation of facts and the attached exhibits are
incorporated herein by this reference.  At the time of filing the
petitions, petitioners' mailing address was located at Franktown,
Virginia.

1.  Petitioner Charles F. Patterson's Net Operating Loss

On his 1991 return, petitioner Charles F. Patterson claimed
an NOL carryover, purportedly attributable to the tax years 1988
through 1990, in the amount of $113,259.  Upon examination,
respondent disallowed the claimed NOL carryover.  Respondent
argues that petitioner has failed to substantiate the loss in
question.  The record does not contain petitioner's returns for
the tax years 1988 through 1990.

---

[6]  On their respective 1991 returns, petitioners each
claimed depreciation expenses in the amount of $7,255.  After
respondent's concession in the amount of $1,405, and each
petitioner's concession in the amount of $900, the amount of
depreciation remaining in dispute, with respect to each
petitioner, is $4,950.  On their 1992 return, petitioners claimed
depreciation expenses in the amount of $8,166.  After
respondent's concession in the amount of $5,622, petitioners'
concession in the amount of $155, and petitioners' claim for
additional depreciation in the amount of $899, the amount of
depreciation remaining in dispute is $3,288.

## 2. Petitioners' Horse- and Dog-Breeding Activities

On January 1, 1988, petitioners began operating a horse-racing and horse-breeding business called Arabian Hill Horse Park (Arabian Hill), which continued operations throughout the taxable years in issue. On Schedules C of their respective 1988 returns, petitioners began reporting income and expenses attributable to Arabian Hill. Petitioners also bred American Kennel Club registered dogs for sale during the tax years in issue.

### (a) Casualty and Theft Losses in 1991

In 1990, petitioners purchased a horse named Since Gussie. Petitioners each claimed depreciation expenses with respect to Since Gussie on their respective 1990 returns, indicating an original basis in the amount of $700. In May 1991, Since Gussie unexpectedly died from an uncertain cause. Petitioners calculated Since Gussie's adjusted basis to be $467 at the date of death. Petitioners have stipulated that they have offered no substantiation in regard to the price they paid for Since Gussie in 1990.

During 1991, one of petitioners' puppies was stolen. The record does not indicate whether petitioners purchased the puppy or whether the puppy was born on petitioners' ranch.

On their 1991 returns, petitioners claimed casualty loss deductions in the amount of $4,000, attributable to Since Gussie's purported fair market value on the date of death, and in the amount of $150, attributable to the puppy's fair market value

on the date it disappeared.  Upon examination, respondent

disallowed the claimed deductions, asserting that petitioners had

presented no evidence regarding their cost basis in either Since

Gussie or the puppy.


   (b)  Amortization of Startup Expenditures for 1991 and 1992

   Prior to commencing operation of Arabian Hill in 1988,

petitioners acquired horses and related assets during the years

1982 through 1987.  Petitioners estimate that they incurred

startup expenditures related to Arabian Hill in the amount of

$20,370.  Petitioners itemize their claimed startup expenditures

as follows:

| | |
|---|---:|
| Research--assessing viability | $1,680 |
| Asset search | 3,130 |
| Seminars, clinics, and other events | 3,060 |
| Tack and supplies | 10,000 |
| Other developmental expenditures | 2,500 |
| Total | 20,370 |

Petitioners assert that they are entitled to amortize these

expenditures as start-up expenditures, beginning with the taxable

year 1988 and continuing for the following 4 years.  Accordingly,

on each of their 1991 and 1992 returns, petitioners claimed an

amortization expense deduction in the amount of $4,074,

attributable to these purported expenditures.  Upon examination,

respondent disallowed petitioners' claims for amortization

deductions, asserting that petitioners had failed to make a

timely election to amortize the startup expenditures under

section 195, and that petitioners had failed to adequately substantiate the claimed expenditures.

(c)  Depreciation

    (1) 1991

On Schedules C of their respective tax returns for the taxable year 1991, petitioners claimed the following combined depreciation:

| | |
|---|---:|
| Assets placed in service before 1991 | $11,044 |
| Vehicles | 1,930 |
| Assets placed in service in 1991 | 1,536 |
| Total depreciation | 14,510 |

The claimed depreciation attributable to assets placed in service before 1991 is as follows:

| Property | Years | Percentage | Basis | Placed in Service | Deduction |
|---|---|---|---|---|---|
| 20 horses | 3 | 66.67 | $77,000 | 1/1/88 | $5,723 |
| Business equipment | 5 | 40.00 | 3,895 | 1/1/88 | 449 |
| Computer & peripherals | 5 | 40.00 | 5,405 | 1/1/88 | 669 |
| Machinery & equipment | 5 | 40.00 | 12,693 | 1/1/88 | 1,462 |
| Nonlisted vehicles | 5 | 40.00 | 7,600 | 1/1/88 | 876 |
| Office furniture | 7 | 28.57 | 1,200 | 1/1/88 | 150 |
| Professional library | 20 | 7.50 | 4,125 | 1/1/88 | 272 |
| 3 horses | 3 | 66.67 | 1,954 | 1/1/90 | 1,027 |
| Farm tools | 5 | 40.00 | 479 | 1/1/89 | --- |
| Business equipment | 5 | 40.00 | 643 | 1/1/90 | 359 |
| Professional library | 20 | 7.50 | 526 | 1/1/89 | --- |
| Professional library | 20 | 7.50 | 265 | 1/1/90 | 57 |
| Total | | | | | 11,044 |

Petitioners owned 19 horses when they commenced operation of Arabian Hill on January 1, 1988.  Petitioners had acquired 14 of the 19 horses in question, and the remaining 5 were foaled at Arabian Hill.  Petitioners calculated the depreciable bases of

all 19 horses by using what petitioner Charles F. Patterson considered to be the horses' combined fair market values on that date. Petitioners have stipulated that they have not provided any substantiation as to the cost of any of the horses which they acquired prior to 1988. Petitioners also acquired a 20th horse during 1988 and used the horse's purported cost as its depreciable basis. Petitioners have stipulated that they have not supplied any substantiation as to the cost or acquisition date of this horse.

With respect to the business equipment, machinery and equipment, nonlisted vehicles, office furnishings, and library materials placed in service on January 1, 1988, petitioner calculated depreciable bases from his estimate of the fair market values of the assets on that date. With respect to the computer and peripherals placed in service on January 1, 1988, petitioner calculated depreciable bases from the purported cost of the items in question. Petitioners have stipulated that they have not provided any substantiation as to the acquisition dates or cost of the specific items of business equipment, computer and peripherals, machinery and equipment, nonlisted vehicles, office furnishings, and library materials.

Petitioners placed three horses, Moonsang, Since Gussie, and Puget Sound, in service on January 1, 1990. Petitioner listed cost bases attributable to the horses in the amounts of $400, $700, and $800, respectively. In addition, petitioner added a

total of $54 to the cost bases of the horses, purportedly attributable to direct charges associated with their purchase. Accordingly, petitioners claimed depreciation with respect to these horses, calculating a total depreciable basis in the amount of $1,954. Petitioners have stipulated that they have not supplied any substantiation as to the cost of these three horses.

Petitioners claimed depreciation with respect to farm-related tools and equipment placed in service on January 1, 1989, and business equipment placed in service on January 1, 1990. Petitioners have stipulated that they have not provided any substantiation as to the cost of these items.

Petitioners claimed depreciation with respect to library materials placed in service on January 1, 1989 and 1990. Petitioners have stipulated that they have not provided any substantiation as to the cost of these items.

Petitioners claimed depreciation with respect to the following five vehicles:

| Description | Business Use | Placed in Service | Cost Basis | Remaining Basis | Years | Method | Deduction |
|---|---|---|---|---|---|---|---|
| Dodge 1-ton | 100% | 1/1/88 | $2,500 | $720 | 5 | 200 DB | $288 |
| Jeep Wagon | 100 | 1/1/88 | 1,200 | 346 | 5 | 200 DB | 138 |
| Ford 1-Ton | 100 | 1/1/88 | 2,000 | 576 | 5 | 200 DB | 230 |
| Chevy C-50 | 100 | 8/6/91 | 2,196 | 2,196 | 5 | ½ 200 DB | 440 |
| Dodge 3/4-ton | 100 | 8/10/91 | 4,176 | 4,176 | 5 | ½ 200 DB | 834 |
| Total | | | | | | | 1,930 |

Petitioner calculated the depreciable bases of the three vehicles that were placed in service on January 1, 1988, from his estimate of their respective fair market values as of that date.

Petitioners have stipulated that they have not provided any information regarding the acquisition dates and costs of these three vehicles.  Petitioners have substantiated the $2,196 cost basis of the Chevy C-50 and the $4,176 cost basis of the Dodge 3/4-ton.  Accordingly, respondent has conceded the depreciation claimed by petitioners with respect to these two vehicles.

Petitioners placed the following assets in service in 1991:

| Property | General Depreciation System | Basis | Recovery Period | Method | Deduction |
|----------|------|-------|--------|--------|-----------|
| 2 horses | 3-yr. prop. | $3,100 | 3 | 200 DB | $1,033 |
| Computer & peripherals | 5-yr. prop. | 2,226 | 5 | 200 DB | 452 |
| Office furniture | 7-yr. prop. | 210 | 7 | 200 DB | 30 |
| Business library | 20 yr. prop. | 562 | 20 | 150 DB | 21 |
| Total | | | | | 1,536 |

Petitioners have substantiated the claimed costs of these assets. Accordingly, respondent has conceded the depreciation claimed by petitioners with respect to these assets.

Petitioners have conceded that they erroneously computed a portion of their claimed depreciation in 1991.  As a result of these errors, petitioners conceded $1,800 of the $14,510 total depreciation claimed for the 1991 taxable year.  On the basis of petitioners' concession in the amount of $1,800, and respondent's concession in the amount of $2,810, the remaining amount of claimed depreciation in dispute is $9,900.  See supra note 4. With respect to the amount remaining in dispute, respondent argues that petitioners' failure to substantiate the depreciable

bases in, or acquisition dates of, the assets in question

precludes their claims for depreciation.

(2) 1992

On Schedule C of their 1992 tax return, petitioners claimed

the following depreciation:

| | |
|---|---|
| Assets placed in service before 1991 | $4,340 |
| Vehicle | 3,634 |
| Assets placed in service in 1991 | 202 |
| Total depreciation | [1]8,176 |

[1] Petitioners' return, as well as the stipulation of facts, incorrectly calculated this total as $8,166.

The claimed depreciation attributable to assets placed in service

before 1992 is as follows:

| Property | Years | Percentage | Basis | Placed in Service | Deduction |
|---|---|---|---|---|---|
| 3 horses (now 2) | 3 | 66.67 | $1,954 | 1/1/90 | $434 |
| 2 horses | 3 | 66.67 | 3,100 | 1/1/91 | 1,378 |
| Business equipment | 5 | 40.00 | 3,895 | 1/1/88 | 269 |
| Machinery/equipment | 5 | 40.00 | 12,693 | 1/1/88 | 877 |
| Farm tools | 5 | 40.00 | 479 | 1/1/89 | 53 |
| Business equipment | 5 | 40.00 | 643 | 1/1/90 | 123 |
| Computer & peripherals | 5 | 40.00 | 2,226 | 1/1/91 | 710 |
| Office furniture | 7 | 28.57 | 1,200 | 1/1/88 | 107 |
| Office furniture | 7 | 28.57 | 210 | 1/1/91 | 51 |
| Professional library | 20 | 7.50 | 4,125 | 1/1/88 | 236 |
| Professional library | 20 | 7.50 | 526 | 1/1/89 | 33 |
| Professional library | 20 | 7.50 | 265 | 1/1/90 | 18 |
| Professional library | 20 | 7.50 | 562 | 1/1/91 | 41 |
| Total | | | | | 4,330 |

With respect to those assets placed in service before 1992, the

facts pertaining to petitioner Charles F. Patterson's calculation

of depreciable bases and petitioners' substantiation of costs and

acquisition dates are the same as those facts applicable to the

1991 taxable year, discussed supra. Petitioners now claim

additional depreciation in the amount of $374 for the taxable

year 1992, attributable to a computer and peripherals listed on

the 1991 return with a basis of $5,405, but for which no

depreciation had been claimed for the 1992 taxable year.

Petitioners have established the bases of assets that were

placed in service in 1991.  Respondent, therefore, concedes that

petitioners are entitled to depreciation with respect to those

assets in the amount of $2,180 for the taxable year 1992.

Petitioners claimed depreciation for the 1992 taxable year

with respect to six vehicles in the following amounts:

| Description | Business Use | Placed in Service | Cost Basis | Remaining Basis | Years | Method | Deduction |
|---|---|---|---|---|---|---|---|
| Dodge 1-Ton | 100% | 1/1/88 | $2,500 | $432 | 5 | 100 DB | $173 |
| Jeep Wagon | 100 | 1/1/88 | 1,200 | 208 | 5 | 200 DB | 83 |
| Ford 1-Ton | 100 | 1/1/88 | 2,000 | 346 | 5 | 200 DB | 138 |
| Chevy- C-50 | 100 | 8/6/91 | 2,196 | 1,756 | 5 | ½ 200 DB | 702 |
| Dodge 3/4-Ton | 100 | 8/10/91 | 4,176 | 3,340 | 5 | ½ 200 DB | 1,336 |
| Ford F-350 | 100 | 2/15/92 | 6,010 | 6,010 | 5 | ½ 200 DB | 1,202 |
| Total | | | | | | | 3,634 |

The first five vehicles listed are the same five vehicles upon

which petitioners claimed depreciation in 1991.  The facts

pertaining to petitioners' calculation of the depreciable bases

of these five vehicles and petitioners' substantiation of their

costs and acquisition dates are the same as those facts

applicable to the 1991 taxable year.  Accordingly, respondent has

conceded that petitioners are entitled to depreciation relating

to the Chevy C-50 and Dodge 3/4-ton in the amounts of $702 and

$1,336, respectively.  Petitioners' claimed depreciation with

respect to the three vehicles placed in service on January 1,

1988, remains in dispute. In addition, petitioner placed in service a Ford F-350 during the 1992 taxable year. Petitioners have substantiated the $6,010 cost basis of this vehicle, and accordingly, respondent has conceded that petitioners are entitled to depreciation with respect to that vehicle in the amount of $1,202.

Petitioners now contend that they used additional nonlisted vehicles in the operation of Arabian Hill, included on their 1991 returns with a basis of $7,600, for which no depreciation was claimed on their 1992 return. Petitioners now claim additional depreciation in the amount of $525 with respect to these vehicles.

Petitioners placed the following assets in service during 1992:

| Property | General Depreciation System | Basis | Recovery Period | Method | Deduction |
|---|---|---|---|---|---|
| Machinery/equipment | 5-yr. prop. | $543 | 5 | 200 DB | $109 |
| Computer & peripherals | 5-yr. prop. | 315 | 5 | 200 DB | 63 |
| Office furniture | 7-yr. prop. | 125 | 7 | 200 DB | 18 |
| Business library | 20-yr. prop. | 311 | 20 | 150 DB | 12 |
| Total | | | | | 202 |

Petitioners have substantiated their bases in these assets. Accordingly, respondent has conceded that petitioners are entitled to claimed depreciation in the amount of $202.

On the basis of petitioners' concession in the amount of $155, petitioners' claim for additional depreciation in the amount of $899 ($374 for computer peripherals plus $525 for

additional vehicles), and respondent's concession of $5,622 of the $8,166 in depreciation claimed on their return, the total amount of depreciation in dispute for 1992 is $3,288. With respect to the amount remaining in dispute, respondent argues that petitioners' failure to substantiate the depreciable bases in or acquisition dates of the assets in question precludes their claim for depreciation.

(d) Office Expenses in 1992

Just prior to trial, petitioners claimed deductions in the amount of $958, attributable to office expenses, which were not claimed on their 1992 return. Although petitioners repeated their assertion of this claim in their posttrial answering brief, they did not discuss this issue at trial, and have presented no evidence to substantiate these claimed expenses.

OPINION

We begin by noting that respondent's determinations are presumed correct, and petitioners bear the burden of proving that those determinations are erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Moreover, deductions are a matter of legislative grace, and petitioners bear the burden of proving that they are entitled to any deductions claimed. INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992).

1. Net Operating Loss

We first address whether petitioner Charles F. Patterson is entitled to claim an NOL on his 1991 return in the amount of

$113,259.  Petitioner's first argument is that we lack jurisdiction to resolve this issue.  Petitioner's argument in this regard, as we understand it, is that the Court lacks jurisdiction because petitioner's claim for an NOL carryover in 1991 did not affect his tax liability for that year.  Petitioner explains his position as follows:  "Petitioner Patterson's net operating loss carryforwards and, $0.59 plus tax, will buy amedium coffee at MacDonalds.  It is nothing.  The Court does not have jurisdiction over 'nothing'."

Petitioner's argument is without merit.  Section 6213(a) vests this Court, upon filing of a taxpayer's timely petition, with jurisdiction over the adjustments contained in the notice of deficiency and claims made in the petition.  Petitioner claimed an NOL carryover in the amount of $113,259 on his 1991 return. Respondent, in the notice of deficiency, determined that petitioner was not entitled to the claimed carryover. Petitioner's petition in docket No. 6383-95 contests respondent's determination insofar as it pertains to the disallowance of the claimed NOL carryovers.  Therefore, we have jurisdiction with respect to this issue. Dorl v. Commissioner, 57 T.C. 720, 721 (1972), affd. per curiam 507 F.2d 406 (2d Cir. 1974)

Petitioner next contends that, notwithstanding the jurisdictional issue, he is entitled to the NOL carryover claimed on his return.  An NOL is the excess of allowable deductions over

gross income. Sec. 172(c). An NOL for any taxable year is first carried back to each of the 3 taxable years preceding the taxable year of the loss and then carried over to each of the 15 taxable years following the taxable year of the loss. Sec. 172(b)(1)(A) and (B) and (b)(2). A taxpayer may elect to forgo the carryback period, and carry over the entire NOL. Sec. 172(b)(3). The amount of an NOL, as well as the carryback and carryforward periods, is to be determined pursuant to the law applicable to the year in which the losses occurred, without regard to the law applicable to other years to which the losses are carried back or forward. Reo Motors, Inc. v. Commissioner, 338 U.S. 442, 446 (1950). The taxpayer bears the burden of proving the fact and the amount of the loss. Rule 142(a); Ocean Sands Holding Corp. v. Commissioner, T.C. Memo. 1980-423, affd. without published opinion 701 F.2d 167 (4th Cir. 1983).

Respondent argues that petitioner has not established that he incurred the losses in question.[7] Petitioner has failed to present any evidence, including books, records, or tax returns for the years 1988 through 1990, to substantiate the claimed losses.[8] Apart from his broad assertion that he is entitled to

---

[7] Respondent also argues that petitioner did not properly elect to forgo the 3-year net operating loss carryback period. We need not, and do not, address this issue.

[8] We recognize that petitioner's returns for the years 1988 through 1990 would not, standing alone, establish that petitioner
(continued...)

the claimed NOL, petitioner has failed to provide any hint as to where the losses may have originated.  Petitioner has failed to meet his burden of proof with respect to this issue.  We, therefore, sustain respondent's determination.

2.  Horse- and Dog-Breeding Activities

    (a) Casualty and Theft Losses in 1991

We now address whether petitioners are entitled to casualty and theft losses claimed for 1991, relating to the death of Since Gussie and the purported theft of a puppy.  Section 165 provides that taxpayers may deduct certain losses, including losses resulting from casualty or theft, sustained during the taxable year and not compensated by insurance or otherwise.  Sec. 165(a), (c)(3).  A taxpayer may deduct a casualty loss in the year in which the loss is sustained and may deduct a theft loss in the year in which the loss is discovered.  Sec. 165(a), (c)(3), (e). The amount of a casualty or theft loss is equal to the lesser of the fair market value or the adjusted cost basis of the property in question.  Secs. 1.165-7(b) and 1.165-8(c), Income Tax Regs. Therefore, if a taxpayer fails to establish the cost or other basis of property underlying a claim for a casualty or theft loss deduction, no deduction is allowable.  Zmuda v. Commissioner, 79 T.C. 714, 727 (1982), affd. 731 F.2d 1417 (9th Cir. 1984).

_____

    [8](...continued)
incurred the losses in question.  Wilkinson v. Commissioner, 71 T.C. 633, 639 (1979).

Respondent denied petitioners' claim for a casualty loss deduction relating to Since Gussie's death, arguing that petitioners had improperly used Since Gussie's fair market value at the time of death to compute the amount of the deduction when, by petitioners' own calculations, Since Gussie's fair market value exceeded adjusted basis. Respondent further argues that petitioners' failure to produce any documentation concerning Since Gussie's adjusted basis precludes their entitlement to any casualty loss whatsoever. Petitioners argue that, despite the plain language of the statute and the accompanying regulation, the amount of the casualty loss deduction with respect to Since Gussie should be determined with regard to her fair market value rather than their adjusted basis, regardless of whether Since Gussie's fair market value exceeded their adjusted basis at the time of death. In so doing, petitioners contend that race horses are distinct assets and should be treated as such. Petitioners argue on brief that "An Affirmed can not be treated exactly the same as his anvil nor would the human conscience allow it." (Fn. refs. omitted.)[9] Petitioners further state:

> That [Since Gussie's] adjusted basis was $467 at the time of death is of no importance, to the material matter or economic impact, beyond its part in the accounting equation. The great triple crown winner, Secretariat, was a home-bred and never had an adjusted basis; he under the Internal Revenue Code and

---

[9] "Affirmed" refers to thoroughbred horse-racing's 1978 Triple Crown winner.

Regulations was a zero ($0) and if he had been lost in the same way, no deduction for the loss would have been allowed under the interpretation that Respondent puts forth, and therein lies the <u>error</u>. The unequivocal intent of the tax code is equilibrium--to strike a balance amongst taxpayers so that all may receive fairest treatment and to be subject only to the fairest amount of tax.

\*         \*         \*         \*         \*         \*         \*

Horses are discrete in terms of casualty losses of business property. Certainly the ilk of Since Gussie is. It is incumbent upon the Commissioner to discriminate, whether by adding another paragraph or otherwise to this regulation and the Petitioners look to this Court for a first step in that direction.

We reject petitioners' argument. Section 1.165-7(b), Income Tax Regs., expressly and unambiguously provides that the deductible casualty loss amount is the lesser of either the asset's basis or its fair market value at the time of the casualty. There exists no exception for casualties involving race horses, and it is beyond our authority to fashion such an exception. Furthermore, other than petitioner's oral testimony, petitioners offered no evidence, such as receipts or bills of sale, to prove their adjusted basis in Since Gussie. Petitioners similarly offered no evidence concerning their basis in the puppy that was purportedly stolen. Accordingly, we sustain respondent's determination.

(b) <u>Amortization of Startup Expenditures for 1991 and 1992</u>

We now address whether petitioners are entitled to amortize startup expenditures with respect to Arabian Hill. Section 195(a) provides that generally, taxpayers are not allowed to

deduct startup expenditures. Taxpayers, however, may elect to treat startup expenditures as deferred expenses which may be amortized over a period of not less than 60 months as may be selected by the taxpayer, beginning with the month in which the active trade or business begins. Sec. 195(b)(1). Startup expenditures include only those expenditures "which, if paid or incurred in connection with the operation of an existing active trade or business * * *, would be allowable as a deduction for the taxable year in which paid or incurred." Sec. 195(c)(1)(B). For this reason, an expenditure which an existing trade or business would capitalize, rather than wholly expense, cannot be amortized as a startup expenditure. S. Rept. 96-1036 at 12 (1980). A taxpayer seeking to amortize startup expenditures must elect do so no later than the time prescribed by law for filing the return for the taxable year in which the trade or business begins. Sec. 195(d)(1).

Respondent denied petitioners' claimed deduction seeking to amortize startup expenditures for two reasons: (1) Petitioners failed to make a timely election to amortize startup expenditures, as required by section 195, and (2) petitioners have failed to meet their burden of substantiating the amount of startup expenditures claimed. With respect to respondent's first argument, petitioners assert that they made a timely election to amortize their startup expenditures. At trial, petitioner attempted to prove that he made a timely election to amortize

startup expenses on petitioners' respective 1988 returns by introducing a completed Form 4562, Depreciation and Amortization, as well as accompanying work papers purportedly drafted while preparing petitioners' 1988 returns.  Petitioner did not provide respondent with these documents prior to trial.

We are troubled by petitioners' failure to provide respondent with the documentation concerning their election to amortize startup expenses until the date of trial.  Nevertheless, we have reviewed these documents and find them insufficient for the purposes of satisfying petitioners' burden, particularly when the record does not contain petitioners' 1988 returns.  We are not required to accept petitioner's self-serving testimony. Masters v. Commissioner, 243 F.2d 335, 338 (3d Cir. 1957), affg. 25 T.C. 1093 (1956); Tokarski v. Commissioner, 87 T.C. 74, 77 (1986).  We find that petitioners have failed to meet their burden of proving that they executed a timely election to amortize startup expenditures.  Therefore, petitioners are not entitled to amortize the startup expenditures claimed during the years in issue.  Krebs v. Commissioner, T.C. Memo. 1992-154.

In addition to finding that petitioners failed to execute a timely election, we also agree with respondent's second argument. In an attempt to substantiate their purported startup expenditures, petitioners have offered a list of the various expenditures incurred between 1982 and January 1, 1988, the date on which they officially commenced operation of Arabian Hill.

The list, which was not compiled contemporaneously, consists of petitioner's estimates. The record also contains several of petitioner's monthly credit card statements dated 1987, purportedly indicating that petitioners incurred startup expenses attributable to the purchase of tack and other supplies in the amount of $6,864.

Petitioners' list is inadequate for the purposes of substantiating the expenses in question. Petitioner did not contemporaneously compile the list, and we do not accept petitioner's self-serving estimates of the expenditures in issue. Cf. Farquson v. Commissioner, T.C. Memo. 1983-615 (rejecting taxpayer's poorly detailed and noncontemporaneous ledger as inadequate for substantiating purported expenses). Furthermore, many of the expenditures in question relate to the purchase of bridles, saddles, and other equipment which had a useful life beyond the year in which they were purchased. These expenditures are capital expenditures, and cannot be considered as startup expenditures. S. Rept. 96-1036, supra at 12; sec. 1.263(a)-2(a), Income Tax Regs.; cf. Rodgers Dairy Co. v. Commissioner, 14 T.C. 66, 71 (1950) (allowing taxpayer's claim for depreciation with respect to bridles and saddles). Although the credit card receipts indicate that petitioners may have incurred expenses related to their horse-breeding and racing activities prior to 1988, we cannot discern from the record those items constituting

startup expenditures as distinguished from those constituting capital expenditures.

For both reasons, respondent is sustained on this issue.

(c) <u>Depreciation for 1991 and 1992</u>

We now address whether petitioners are entitled to claim the depreciation expenses remaining in dispute. Section 167 allows a taxpayer to claim depreciation in relation to property used in a trade or business. Section 1.167(g)-1, Income Tax Regs., provides that with respect to property which has not been used in a trade or business and which is subsequently converted for use in a trade or business, the basis for computing depreciation shall be the property's fair market at that time if less than the property's adjusted basis. Petitioners bear the burden of establishing the proper depreciable basis with respect to those assets underlying their claims for depreciation. Rule 142(a).

Petitioners have failed to substantiate their cost basis in each of the assets presently underlying their disputed claims for depreciation. Petitioner calculated the depreciable basis of most of these assets by estimating each asset's fair market value when placed in service. Petitioners, in support of this position, cite Internal Revenue Service (IRS) Publication 334, Tax Guide for Small Business, at 19, which states: "There are many times when you cannot use cost as a basis. In these cases, the fair market value of the property, or the adjusted basis of certain property may be important." Petitioners interpret this

language to mean that when a taxpayer places an asset in service in a trade or business but cannot determine his or her basis in the asset, the taxpayer may freely elect to use the asset's fair market value at that time as the asset's depreciable basis.

Petitioners have misinterpreted the statutory provisions governing depreciation. Section 1.167(g)-1, Income Tax Regs., unambiguously provides that a taxpayer should use a property's fair market value as the basis of computing depreciation only if less than the property's adjusted basis. An IRS publication, such as the one cited by petitioners, is not to be construed as an authoritative source of Federal income tax law. Zimmerman v. Commissioner, 71 T.C. 367, 371 (1978), affd. without published opinion 614 F.2d 1294 (2d Cir. 1979). In any event, the portion of the IRS publication cited by petitioners does not pertain to the determination of an asset's depreciable basis.

On brief, petitioners contend that the fair market value of many of the assets underlying the depreciation in dispute did not exceed the adjusted basis when placed in service. Petitioners, however, have failed to present any evidence to substantiate the cost bases of the assets which underlie the disputed claims for depreciation. As a result, we cannot determine whether the fair market value of any of the assets in question was less than adjusted basis when the assets were placed in service. Moreover, the record contradicts petitioner's assertion. For example, petitioner admitted at trial that he calculated the depreciable

basis of a horse named Jetta by estimating a fair market value of $3,600 as of January 1, 1988, while acknowledging that he had purchased the horse for less than that amount.

Nevertheless, we believe that petitioners likely acquired, for consideration, some of the assets underlying the disputed claims for depreciation. Petitioners had bases in these assets upon which they could claim depreciation. Where a taxpayer establishes that he or she has incurred a trade or business expense but cannot substantiate the precise amount of the expense, we may estimate the amount of the deductible expense, including expenses attributable to depreciation. Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930); Bell v Commissioner, 13 T.C. 344, 347-348 (1949). We cannot, however, allow a deduction unless the taxpayer presents some rational basis upon which estimates may be made. Vanicek v. Commissioner, 85 T.C. 731, 743 (1985). In this instance, petitioners' failure to substantiate the costs of the assets underlying their claims for depreciation would reduce any attempt on our part to estimate petitioners' depreciation expenses to little more than guesswork. We, therefore, sustain respondent's determination.

(d) 1992 Office Expenses

We now address petitioners' claim for a deduction for office expenses in the amount of $958. Petitioners did not discuss this issue at trial, and the record contains no evidence to substantiate the claimed expenses. Petitioners have failed to

meet their burden of proof on this issue.  We, therefore, sustain respondent's determination.  Rule 142(a).

To reflect the foregoing,

<u>Decisions will be entered</u>

<u>under Rule 155</u>.