T.C. Summary Opinion 2015-71

UNITED STATES TAX COURT

KENNETH LEE NEWHOUSE AND LINDSAY RAE NEWHOUSE, Petitioners
<u>v</u>. COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 15616-11S.                    Filed December 2, 2015.

Kenneth Lee Newhouse and Lindsay Rae Newhouse, pro se.

<u>Jessica R. Nolen</u>, for respondent.

SUMMARY OPINION

PARIS, <u>Judge</u>:  This case was heard pursuant to the provisions of section

7463 of the Internal Revenue Code in effect when the petition was filed.[1]

_____

[1]All section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined a deficiency of $9,006 in, and a section 6662 accuracy-related penalty of $1,801.20 in relation to, petitioners' 2008 Federal income tax. The issues for decision are whether petitioners are: (1) entitled to a net operating loss (NOL) carryforward from 2006; (2) entitled to a supplies expense deduction, in excess of the amount respondent allowed, claimed on the Schedule C, Profit or Loss From Business, attached to their 2008 Federal income tax return; (3) entitled to an other expense deduction in excess of the amount respondent allowed for U.S. Postal Service (USPS) expenses reported on the Schedule C attached to the return; and (4) liable for a section 6662 accuracy-related penalty.[2]

Background

Some of the facts are stipulated and so found. The stipulated facts and facts drawn from stipulated exhibits are incorporated herein by this reference. Mr. Newhouse lived in Oregon and Ms. Newhouse lived in Missouri when the petition was filed.

_____

[2]Respondent also adjusted the amounts of petitioners' self-employment tax and corresponding deduction. Those adjustments are computational and will not be discussed further.

Mr. Newhouse was a successful chiropractor until he was involved in a serious automobile accident in 1994. He underwent multiple surgeries as a result of the accident. For many years after the accident, Mr. Newhouse continued his chiropractor practice but found it physically painful and uncomfortable to do so. In 2005 he was involved in another automobile accident in which he sustained multiple injuries. Mr. Newhouse could not physically work, so he decided not to renew his chiropractor's license.

Unable to pursue his chosen profession, Mr. Newhouse decided to offer his knowledge and expertise to other chiropractors through direct marketing sales by starting a business called Million Dollar Marketing d.b.a. The Practice Doctor. The business offered newsletters and what Mr. Newhouse termed "products" that discussed ways to increase a chiropractor's patient base and income.[3]

Mr. Newhouse "rented" a direct mail list of chiropractors from a "list broker" and paid to use the list three times. This list contained the names and mailing addresses of approximately 5,000 chiropractors. The business mailed

---

[3]All of the products were printed, bound, and shipped by FedEx-Kinkos. Respondent allowed petitioners' claimed deduction for those expenses. Although those expenses were not in issue, much of Mr. Newhouse's testimony centered around the products and what it cost to put them together.

"postcards"[4] to all chiropractors on the list. If a chiropractor responded to a postcard, sales letters, but no more postcards, were mailed to the chiropractor. Mr. Newhouse's four sales letters ranged from 11 to 25 pages. A chiropractor would receive all four sales letters if he made no purchase after responding to a postcard. Depending on what a chiropractor purchased after receiving the sales letters, newsletters and/or products would be mailed to the chiropractor.

Mr. Newhouse purchased several types of supplies for the postcards, newsletters, sales letters, and products--paper, envelopes, coils to bind the individual pages of the products, CDs, DVD cases for the audio CDs that accompanied the written materials, stamps, and mailing labels. Mr. Newhouse kept all of the business' receipts in labeled ziplock bags. The ziplock bags were then stored in boxes.

In 2008 there were 71 subscribers to the business' newsletter. A newsletter was mailed to each subscriber once a month. Each newsletter contained approximately 12 pages of written materials, a "Gold insert" of 2 to 6 pages, and an audio CD. Petitioners entered into evidence copies of the January, February, March, May, July, August, and November newsletters. Each newsletter bears an

---

[4]Each postcard was approximately the size of one-half of an 8-1/2- by 11-inch piece of card stock.

issue number at the top left of its first page. The January 2008 newsletter is "issue # 49". The newsletters are numbered sequentially, and the missing months' newsletters fit the numerical order of the first newsletter for 2008 being "issue # 49" and the December issue having been "issue # 60".

Although Mr. Newhouse was primarily responsible for the business, Mr. and Ms. Newhouse were both involved in its day-to-day operations. Ms. Newhouse's focus was the graphic design of the materials mailed to chiropractors, but she also completed administrative tasks such as mailing products and writing and signing checks on behalf of the business.

Petitioners timely filed a 2008 Federal income tax return. On line 21, Other income, they reported a "Prior Year NOL" of "-$6,359". On the Schedule C attached to the return petitioners reported gross receipts or sales of $105,668. They claimed, inter alia, deductions for supplies expenses of $18,024 and other expenses of $46,938, which included USPS expenses of $19,444.

In the summer of 2009 Mr. and Ms. Newhouse separated and divorced. When they separated, each rushed to take as many possessions as possible from the marital home. Ms. Newhouse was assisted in this rush by family members and members of the congregation of petitioners' church. Petitioners described their separation as a time of "chaos and confusion". At the time of trial neither Mr. nor

Ms. Newhouse knew what had happened to the boxes containing the 2008 business receipts.

Respondent issued a notice of deficiency dated March 31, 2011, to petitioners: (1) disallowing their claimed NOL in full; (2) disallowing $11,920 of their claimed supplies expense deduction; (3) disallowing $18,265 of their reported USPS expenses; and (4) determining that they were liable for an accuracy-related penalty of $1,801.20.

## Discussion

Generally, the Commissioner's determination set forth in a notice of deficiency is presumed correct, and the taxpayer bears the burden of showing the determination is in error. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Deductions and credits are a matter of legislative grace, and the taxpayer bears the burden of proving entitlement to any deduction or credit claimed on a return. INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).

Under certain circumstances the burden of proof as to factual matters may shift to the Commissioner pursuant to section 7491(a). Petitioners did not argue the applicability of section 7491(a) and did not show that they meet its

requirements to shift the burden of proof; therefore the burden of proof remains on them.

I.    NOL

Generally, an NOL is the excess of allowable deductions over gross income for a given tax year. See sec. 172(c). An NOL generally must first be carried back 2 years and then carried forward 20 years. Sec. 172(b)(1)(A). A taxpayer who makes an election can waive the carryback requirement and carry forward the NOL directly. Sec. 172(b)(3). An election to waive the carryback must be made on a timely filed tax return for the year of the NOL for which the election is to be in effect. Id.; see Moretti v. Commissioner, 77 F.3d 637, 647 (2d Cir. 1996) (taxpayer's failure to timely file a tax return precluded subsequently claiming an NOL carryforward without the NOL's being absorbed, to the extent required, by the carryback year).

The NOL must be consumed in the earliest year for which there is income available to be offset by the loss. See sec. 172(b)(2). Any excess NOL that is not consumed in one year is carried to the next earliest year. Id. A taxpayer claiming an NOL must file with his return "a concise statement setting forth the amount of the net operating loss deduction claimed and all material and pertinent facts

relative thereto, including a detailed schedule showing the computation of the net operating loss deduction." Sec. 1.172-1(c), Income Tax Regs.

On their 2008 Federal income tax return petitioners reported an NOL of $6,359 from 2006. Mr. Newhouse provided scant testimony, and Ms. Newhouse no testimony, about the genesis of the NOL. Although the Newhouses did not hold themselves out as real estate professionals, Mr. Newhouse testified that the NOL pertained to "purchasing and beginning to rehab houses" and that his CPA informed him that he could report only "this much loss in a year, but you carry it forward and apply it towards a future year." Mr. Newhouse admitted he did not have any additional information or argument for the claimed NOL.

Petitioners provided no evidence to substantiate their claimed NOL from 2006. Although petitioners provided their 2006 and 2007 Federal income tax returns, which report the claimed NOL from 2006 and its carryforward to 2007, the returns alone cannot substantiate the NOL. See Wilkinson v. Commissioner, 71 T.C. 633, 639 (1979) (tax return is merely a statement of claim and does not establish truth of matters stated therein). Even if the Court found that petitioners' claimed NOL was valid, no election to waive the two-year carryback period was filed with either the 2006 or the 2007 return. See sec. 172(b)(3). Therefore, respondent's determination disallowing petitioners' claimed NOL is sustained.

II.    Schedule C Expenses

Section 162(a) permits a deduction for ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business.  An expense is "ordinary" if it is customary or usual within a particular trade, business, or industry.  Deputy v. du Pont, 308 U.S. 488, 495 (1940).  An expense is "necessary" if it is appropriate and helpful for the business.  Commissioner v. Heininger, 320 U.S. 467, 471 (1943).

Petitioners' burden requires them to substantiate deductions claimed by keeping and producing adequate records that enable the Commissioner to determine their correct tax liability.  See sec. 6001; Hradesky v. Commissioner, 65 T.C. 87, 89-90 (1975), aff'd per curiam, 540 F.2d 821 (5th Cir. 1976); Meneguzzo v. Commissioner, 43 T.C. 824, 831-832 (1965); sec. 1.6001-1(a), Income Tax Regs.

If a taxpayer establishes that an expense is deductible but is unable to substantiate the precise amount, the Court may estimate the deductible amount, bearing heavily against the taxpayer whose inexactitude is of his own making.  See Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930).  The taxpayer must present sufficient evidence for the Court to form an estimate because without such a basis any allowance would amount to unguided largesse.  Williams v. United

States, 245 F.2d 559, 560-561 (5th Cir. 1957); Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985).

A.  Supplies Expenses

Petitioners claimed a supplies expense deduction of $18,024 on the Schedule C attached to their 2008 Federal income tax return.  Respondent allowed $6,104 of petitioners' claimed supplies expense deduction.

Mr. Newhouse testified about the amounts of paper, spiral binders, CDs, DVD cases, envelopes, and other supplies he needed to put together his newsletters, sales letters, and products.  Although the Court understands that all of theses supplies would be necessary for Mr. Newhouse's business, it was not clear from his testimony how he arrived at the amount of the deduction.

All of the items Mr. Newhouse mentioned as supplies could also have been a part of the USPS expenses discussed infra or the FedEx-Kinko's expenses respondent allowed in full.  Additionally, Mr. Newhouse testified that "much of the expenses for supplies were probably for that house".  There was scant and disjointed testimony about Mr. Newhouse's side business of renovating houses for resale and no explanation for why expenses associated with that business were included on the Schedule C attached to their 2008 return.  For these reasons, the

Court will not allow petitioners' supplies expense deduction in excess of the amount respondent has already allowed.

B.    USPS Expenses

Petitioners claimed USPS expenses of $19,444 under an other expenses deduction on the Schedule C attached to their 2008 Federal income tax return. Respondent allowed petitioners to deduct USPS expenses of $1,179--the amount petitioners substantiated through credit card and bank statements.[5]

Both petitioners testified credibly that they created thousands of mailings. That the direct-mail marketing business generated over $100,000 in gross sales or receipts is indicative that petitioners did mail numerous newsletters, sales letters, and products to chiropractors.  Petitioners, however, did not produce receipts for all of the postage they paid in 2008.

To mail one postcard alone to all of the chiropractors on the direct mail list Mr. Newhouse rented would amount to more than $2,000 in postage, and there were three different postcard mailings during the year in issue.[6]  Each postcard

_____

[5]Respondent also allowed petitioners' claimed stamp expense of $410. Petitioners did not explain why they claimed USPS and stamps as separate expenses.

[6]The Court takes judicial notice of the fact, see Fed. R. Evid. 201, that the cost of a postage stamp for the first ounce of a piece of mail was 41 cents from

(continued...)

would have been mailed at the letter rate because of its size. See supra note 4.

Mr. Newhouse credibly testified and presented other evidence that he mailed

multiple postcards, newsletters, and sales letters to chiropractors on the list he

rented. Mr. Newhouse also testified that 10% was the lowest response rate he

could remember to a postcard mailing. At that response rate his second round of

postcard mailings would have gone to 4,500 chiropractors, and his third round

would have been mailed to 4,050 chiropractors. He would then have sent the 500

chiropractors who responded to the first postcard mailing at least one sales letter.

He would have sent at least one sales letter to 450 chiropractors who responded to

the second postcard mailing. He would then have sent at least one sales letter to

the 405 chiropractors who responded to the third postcard mailing. That would be

a total of at least 1,355 sales letters.[7]

As for the newsletters, the Court is satisfied that a newsletter was produced

for every month in 2008 and mailed to the 71 subscribers. The newsletters and

sales letters were between 11 and 25 pages, and some contained audio CDs

---

[6](...continued)
January 1 to May 11, 2008, and 42 cents from May 12 to December 31, 2008.
Each additional ounce was 17 cents.

[7]Mr. Newhouse did not testify about a response rate to his sales letters or
how many products he sold.

packaged in DVD cases.  Although no testimony was given or evidence entered as to the weight of any of these mailings, it is clear from the evidence provided that the sales letters and newsletters weighed more than one ounce.

The Court finds that petitioners did have USPS expenses greater than respondent allowed but cannot allow their reported USPS expenses in full.  The Court will apply the Cohan rule and, using the postal rates supra note 6 and the minimum number of items petitioners would have mailed in 2008, finds that petitioners had postage for postcards of $5,556; postage for sales letters of $786; and postage for newsletters of $494.  Therefore, petitioners are allowed a total of $6,836 of their reported USPS expenses of $19,444.

III.    Section 6662 Accuracy-Related Penalty

Section 6662(a) and (b)(2) authorizes a 20% penalty on the portion of an underpayment of income tax attributable to a substantial understatement of income tax.  Under section 7491(c), the Commissioner generally bears the burden of production with regard to penalties.  Higbee v. Commissioner, 116 T.C. 438, 446 (2001).  Once the Commissioner has met the burden of production, the taxpayer has the burden of proving that the penalties are inappropriate because of reasonable cause or substantial authority.  See Rule 142(a); Hall v. Commissioner,

729 F.2d 632, 635 (9th Cir. 1984), aff'g T.C. Memo. 1982-33; Higbee v. Commissioner, 116 T.C. at 446-447.

There is a "substantial understatement" of income tax for any year if the amount of the understatement for the taxable year exceeds the greater of 10% of the tax required to be shown on the tax return or $5,000. Sec. 6662(d)(1)(A); Higbee v. Commissioner, 116 T.C. at 448. Respondent introduced sufficient evidence to demonstrate that petitioners substantially understated their income tax liability for the year in issue.

Pursuant to section 6664(c)(1), no penalty shall be imposed under section 6662 with regard to any portion of an underpayment if it is shown that there was reasonable cause for such portion and that the taxpayer acted in good faith with respect to such portion. Whether a taxpayer acted with reasonable cause and in good faith is decided on a case-by-case basis, taking into account all pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. Generally, the most important factor is the extent of the taxpayer's effort to assess his proper tax liability. Id.; see also Remy v. Commissioner, T.C. Memo. 1997-72.

Petitioners did not provide any evidence that they acted with reasonable cause and in good faith. Indeed, neither petitioner testified about defenses to the accuracy-related penalty. Accordingly, the Court holds that they are liable for the

section 6662(a) and (b)(2) penalty if the Rule 155 computations show a substantial understatement of income tax.

The Court has considered all of the arguments made by the parties and to the extent they are not addressed herein, they are considered unnecessary, moot, irrelevant, or without merit.

To reflect the foregoing,

Decision will be entered

under Rule 155.