ROGER D. WILKINSON AND ARLENE J. WILKINSON, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3715–77.     Filed January 25, 1979.

Roger D. Wilkinson, pro se.
*Stewart C. Walz,* for the respondent.

HALL, *Judge:* Respondent determined a deficiency of $729 in petitioners' income tax for 1973. The issues for decision are:

(1) Whether petitioners are entitled to certain itemized deductions claimed on their 1973 tax return; and

(2) Whether petitioners are liable for damages under section 6673[1] for instituting proceedings before this Court merely for delay.

## FINDINGS OF FACT

Some of the facts have been stipulated by the parties and are found accordingly.

At the time they filed their petition, petitioners were residents of Boise, Idaho.

Petitioners timely filed their joint income tax return for 1973. Petitioner Roger Wilkinson (hereinafter referred to as petitioner) was a salesman during the year in issue, and his wife Arlene was a nurse. On their joint return, petitioners claimed adjustments to income for moving expenses of $573, employee business expenses of $4,037, and itemized deductions totaling $1,346. Among these itemized deductions were child care expenses of $300 and contributions of $200.

In 1975 respondent audited petitioner's tax return. Petitioner maintained at that time that he had records to substantiate his deductions, but he refused to give these records to respondent. Respondent issued a summons for these records. Upon petitioner's refusal to comply with the summons, respondent filed a petition with the United States District Court for the District of Oregon for an order to show cause why petitioner should not comply with the summons. On September 15, 1975, a hearing was held before the district court at which time petitioner was ordered to bring his documents to a scheduled meeting with respondent, and produce them unless he had some *"legitimate* constitutional privilege or right." (Emphasis added.) At a meeting with respondent on September 22, 1975, petitioner refused to produce any documents; petitioner based his refusal on the Fifth Amendment.[2]

On February 23, 1977, respondent issued a statutory notice

---

[1] All statutory references are to the Internal Revenue Code of 1954, as amended.

[2] At this meeting petitioner was asked, inter alia, to produce records substantiating his expenses for an office in his home, his rent and telephone expenses, his business traveling, his moving and child care expenses, and his charitable contributions. Petitioner stated that he had records to substantiate all of these expenses, but he refused to produce any records. Respondent did not seek a contempt citation against petitioner.

which disallowed petitioner's claimed deductions for moving and employee business expenses and the itemized deductions for child care expenses and contributions. Since the remaining itemized deductions were less than the standard deduction, respondent allowed petitioner the standard deduction.

Petitioner timely filed a petition with this Court in which he contended the following:

(1) That respondent erred in computing a deficiency, and that such error was willful, wanton, malicious, and intentional.

(2) That respondent's determination was arbitrary and the result of the revenue agent's malice, incompetence, ignorance, and prejudice.

(3) That petitioner is a victim of an "unsavory system" because the burden of proof has been placed on him, contrary to the Fifth and Sixth Amendments.

(4) That petitioner is entitled to a jury trial.

(5) That respondent did not prove that petitioner had income of $750 in 1973.

(6) That this Court should be treated as an administrative agency.

(7) That his petition should be treated as a redress of grievances.

(8) That petitioner has been deprived of his rights under, inter alia, the Constitution, the Declaration of Independence, the Magna Carta, the Common Law, the Federalist Papers, and the Mayflower Compact.

In support of his allegations of error, petitioner relied on the "fact" that his tax return was correct and that the return was signed under penalty of perjury. Petitioner also demanded damages in the amount of $6 million and that respondent and/or his agents be prosecuted.

On May 26, 1977, respondent filed a motion to dismiss for failure to state a claim upon which relief can be granted. In response to a "show cause" order, petitioner filed an amended petition which, in essence, simply repeated the allegations of his previous petition.

A hearing on respondent's motion to dismiss was held in Washington, D.C., on July 20, 1977; petitioner did not appear at this hearing. At the hearing, a special trial judge denied

respondent's motion apparently primarily because of petitioner's absence from the courtroom.

On April 14, 1978, respondent sent petitioner a letter requesting photocopies of petitioner's documentary evidence and brought to petitioner's attention several recent cases of this Court dealing with tax protesters.[3] Petitioner read these opinions but still refused to submit verification of his return to respondent unless he were granted "immunity."

On August 25, 1978, respondent sent petitioner another letter enclosing a copy of *Roberts v. Commissioner*, 62 T.C. 834 (1974). Petitioner read the opinion, particularly the statement that "The privilege against self-incrimination does not apply where the possibility of criminal prosecution is remote or unlikely." 62 T.C. at 838. Nevertheless, petitioner continued to refuse to produce his records on the grounds of the Fifth Amendment.

The trial of this case was held in Boise, Idaho, on September 26, 1978. At a pretrial conference held that same date, counsel for respondent stated that respondent was not conducting, and had no present intention to conduct, a criminal investigation with respect to petitioner's taxable year 1973. This representation was repeated by respondent's counsel at the trial. The record contains no evidence that criminal prosecution is more than remotely possible here.

At the pretrial conference, this Court informed petitioner that he had no basis in law for refusing to make his records available. At trial we repeated this. Nevertheless, petitioner continued to refuse to turn over his books and records. He did not present any other evidence in support of his claimed deductions. Petitioner continued to base his refusal to supply either his records or any other evidence on his alleged Fifth Amendment rights. He made no claim that he anticipated or had any reason to anticipate being criminally prosecuted.

At the pretrial conference, respondent informed petitioner that respondent intended to file a motion for damages under section 6673. This motion was filed at trial. Petitioner filed a written response to respondent's motion on October 2, 1978.

---

[3]*Hatfield v. Commissioner*, 68 T.C. 895 (1977); *Roberts v. Commissioner*, 62 T.C. 834 (1974); *Figueiredo v. Commissioner*, 54 T.C. 1508 (1970), affd. in an unpublished order (9th Cir., Mar. 14, 1973).

## ULTIMATE FINDING OF FACT

Petitioner instituted these proceedings before this Court merely to delay paying his taxes.

## OPINION

### I. *Deductions*

The first issue for decision is whether petitioner is entitled to the following deductions claimed on his 1973 income tax return:

| | |
|---|---|
| Moving expenses | $573 |
| Employee business expenses | 4,037 |
| Child care expenses | 300 |
| Contributions | 200 |

In his statutory notice, respondent disallowed these claimed deductions in their entirety. Respondent took this action after petitioner repeatedly refused to furnish respondent with either his books and records or any other evidence in support of these claimed deductions.[4] Petitioner continued to refuse to supply any evidence prior to or at the trial of this case.

### A. Procedural Issues

*1. Fifth Amendment.*—Petitioner has raised myriad constitutional objections to respondent's actions. Central to petitioner's case is his unfounded contention that under the Fifth Amend-

---

[4]See sec. 6001, which provides:

Every person liable for any tax imposed by this title, or for the collection thereof, shall keep such records, render such statements, make such returns and comply with such rules and regulations as the Secretary may from time to time prescribe. Whenever in the judgment of the Secretary it is necessary, he may require any person, by notice served upon such person or by regulations, to make such returns, render such statements, or keep such records, as the Secretary deems sufficient to show whether or not such person is liable for tax under this title.

Sec. 7602 provides in relevant part:

For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability, the Secretary is authorized—

(1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry;

(2) To summon the person liable for tax or required to perform the act, or any officer or employee of such person, or any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act, or any other person the Secretary may deem proper, to appear before the Secretary at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry; * * *

ment he need not produce his books and records to respondent. Petitioner's position is completely without legal merit. As we noted in *Roberts v. Commissioner*, 62 T.C. 834, 838 (1974), "The privilege against self-incrimination does not apply where the possibility of criminal prosecution is remote or unlikely. See *Rogers v. United States*, 340 U.S. 367, 374 (1951); *Brown v. Walker*, 161 U.S. 591, 599–600 (1896)." See also *Figueiredo v. Commissioner*, 54 T.C. 1508, 1512 (1970), affd. in an unpublished order (9th Cir., March 14, 1973). In this case, petitioner was repeatedly told, both prior to and at trial, that respondent was not conducting, and had no intention to conduct, a criminal investigation of petitioner with respect to this taxable year. Petitioner did not even contend to the contrary and made no attempted showing on the basis of which we could conclude that he had any legitimate concern regarding criminal prosecution. Nevertheless, petitioner refused to submit his books and records to either respondent or this Court.

Related to petitioner's Fifth Amendment claim is his contention that respondent's determination, made without access to petitioner's books and records, is arbitrary. We considered a similar contention in *Figueiredo v. Commissioner, supra*, where the taxpayer refused to give his books and records to respondent on account of his alleged Fifth Amendment rights. We held that the taxpayer's "apparently baseless claim of the protection of the self-incrimination provisions of the fifth amendment cannot stand in the way of a determination of [his] civil tax liability." 54 T.C. 1512. We rejected as meritless the taxpayer's contention that, because the deficiency notice was not based on an examination of the taxpayer's books and records, the burden of proof should be shifted to respondent. 54 T.C. at 1513. Accord, *Roberts v. Commissioner, supra* at 838. We reach the same conclusion here.

*2. Other constitutional objections.*—Petitioner's other constitutional objections are also frivolous. These objections include, inter alia, (1) that he has been deprived of his right to a jury trial, (2) that the burden of proof has unconstitutionally been placed on him, (3) that respondent's determination was "arbitrary" because respondent offered no proof in support of the determination, (4) that respondent arbitrarily picked petitioner's tax return for audit because petitioner exercised his constitutional rights, (5) that his right to petition for redress of

grievances has been infringed, (6) that respondent's determination constitutes an unlawful taking of property without due process of law, and (7) that respondent's determination constitutes extortion. Such contentions have been fully discussed—and rejected—in numerous prior opinions of this and other courts. *Swanson v. Commissioner*, 65 T.C. 1180 (1976) (jury trial); *Rockwell v. Commissioner*, 512 F.2d 882, 887 (9th Cir. 1975), affg. a Memorandum Opinion of this Court (burden of proof); *Roberts v. Commissioner, supra* (determination not arbitrary); *Greenberg's Express, Inc. v. Commissioner*, 62 T.C. 324 (1974) (selection of return for audit); *Cupp v. Commissioner*, 65 T.C. 68 (1975), affd. in an unpublished opinion (3d Cir., June 10, 1977) (redress of grievances; due process).

## B. Substantive Issues

Petitioner contends that he is entitled to certain deductions he claimed on his tax return. In support of his claim, however, he has introduced no evidence other than his assertion that his return, signed under penalty of perjury, was correct when it was filed. The fact that a return is signed under penalty of perjury is not sufficient to substantiate deductions claimed on it. *Roberts v. Commissioner, supra* at 837, 839; *Halle v. Commissioner*, 7 T.C. 245 (1946), affd. 175 F.2d 500 (2d Cir. 1949), cert. denied 338 U.S. 949 (1950).

Deductions are a matter of legislative grace. *New Colonial Ice Co. v. Helvering*, 292 U.S. 435, 440 (1934). Respondent's determination—disallowing the claimed deductions—is prima facie correct, and the burden of proof rests with petitioner. *Welch v. Helvering*, 290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure. Petitioner presented no evidence to show that respondent erred; therefore, respondent's determination is sustained. *Helvering v. Taylor*, 293 U.S. 507 (1935); *Figueiredo v. Commissioner, supra* at 1512–1513; *Mayerson v. Commissioner*, 47 T.C. 340, 348–349 (1966).

## II. *Damages*

The next issue is whether this Court should grant respondent's motion to award damages to the United States under section 6673 which provides:

Whenever it appears to the Tax Court that proceedings before it have been instituted by the taxpayer merely for delay, damages in an amount not in

excess of $500 shall be awarded to the United States by the Tax Court in its decision. Damages so awarded shall be assessed at the same time as the deficiency and shall be paid upon notice and demand from the Secretary and shall be collected as a part of the tax.

In light of petitioner's tactics of delay, and his consistent refusal to address the merits, we conclude that we must award damages to the United States.

Congress in 1926 enacted the predecessor of section 6673 which provided as follows:

### FRIVOLOUS APPEALS TO BOARD

SEC. 911. Whenever it appears to the Board that proceedings before it have been instituted by the taxpayer merely for delay, damages in an amount not in excess of $500 shall be awarded to the United States by the Board in its decision. Damages so awarded shall be assessed at the same time as the deficiency and shall be paid upon notice and demand from the collector, and shall be collected as a part of the tax.

H. Rept. 1, 69th Cong., 1st Sess. 19 (1925), stated in relevant part:

*Frivolous appeals.*—In order to prevent advantage being taken of review proceedings before the [Board of Tax Appeals] for the purposes of delaying payment of taxes, the board is authorized to award damages to the United States in an amount not in excess of $500 where it finds that the proceedings have been instituted merely for delay. Similarly the Circuit Courts of Appeals and the Supreme Court are given authority to impose damages for frivolous appeals from the board. Such courts now have this power in the cases coming from the district courts. (See R.S. 1010.)

This was one of two legislative efforts to discourage frivolous appeals.[5] In 1933 the Board of Tax Appeals first exercised its

---

[5]See J. Cook & H. Dubroff, "The United States Tax Court: An Historical Analysis, Part V," 41 Alb. L. Rev. 639, 660–663 (1977), which states:

"Within months after the Board's creation, thousands of taxpayers elected to invoke its jurisdiction to redetermine the Commissioner's deficiency determination. Although most petitions were filed in order to have an impartial resolution of a bona fide dispute, many taxpayers viewed the redetermination procedure as a convenient method of delaying the assessment and collection of taxes. Still others filed petitions for tactical reasons, considering such a maneuver an integral part of the settlement procedures. Taxpayers, however, were not solely responsible for the burdensome number of appeals. The Bureau occasionally issued groundless deficiency notices which also had the effect of increasing the number of petitions filed. Furthermore, the Bureau was not always willing to negotiate settlements in good faith which meant more cases had to go to trial.

"If the Board was to function as an effective forum for tax litigation, action was necessary to discourage the issuance of meritless deficiency notices and the filing of frivolous appeals, as well as to facilitate the disposition of bona fide appeals. Accordingly, over the years, a series of legislative measures and rule changes, designed to penalize taxpayers who file frivolous appeals and to hasten the dispostion of bona fide controversies, have been implemented.

powers under section 911 of the Revenue Act of 1926 in *Coombs v. Commissioner*, 28 B.T.A. 1216 (1933). In two consolidated cases, a cash basis taxpayer filed petitions before the Board to contest disallowance of a deduction taken for an alleged net loss in 1926 and a carryover into 1927. The disallowance occurred because the loss had not been sustained in 1926. A suit had been instituted against Coombs to recover the unpaid balance of a syndicate subscription he made in 1920, in which suit Coombs denied liability. Coombs deducted the amount claimed in the suit as a loss in 1926 and carried the loss over into 1927. The suit was pending during 1926 and all of 1927. The Board stated:

> The respondent's disallowance was obviously correct, and an examination of the entire record, beginning with the original petitions with the appended notices of deficiency, to and including the expiration of the time requested by petitioner in which to file a brief, leaves no reasonable doubt that the petitions were frivolous and that the proceedings have been instituted by the taxpayer merely for delay. Under such circumstances it is provided by section 911, Revenue Act of 1924, as amended by section 1000, Revenue Act of 1926, that damages in an amount not in excess of $500 for each case shall be awarded to the United States by the Board in its decision. This provision was, as appears from the House Ways and Means Committee Report and the Senate Finance Committee Report upon the Revenue Act of 1926, patterned after R.S. sec. 1010 (28 U.S.C.A. sec. 878). The maximum damages of $500 in each case amount to approximately 3 percent of the deficiencies, and such amount is hereby awarded.

We have used this power sparingly in the past.[6] In recent times, however, this Court has been faced with numerous cases which have been commenced without any legal justification by

---

"With reference to frivolous appeals, the response was immediate. In 1926, Congress authorized the Board to impose a filing fee of up to $10. * * *

"A second legislative effort to discourage frivolous appeals resulted from an American Bar Association recommendation which advocated authorizing the Board to impose costs of up to $100 on either party if the appeal was found to be without merit. The plan was aimed at taxpayers 'who seem to think that [the Board's] procedure is simply a barricade to get behind in order to stop the assessment or the collection of taxes' as well as defenses 'made by the Commissioner which are without merit and where the taxpayer's contention from the evidence in the Commissioner's files should have been conceded.' Congress was apparently hesitant, however, to impose costs against the Government. As a consequence, the Board was only authorized to penalize taxpayers 'whenever it * * * [appeared] to the Board that proceedings before it * * * [had] been instituted by the taxpayer merely for delay.' The Board/Tax Court has used this power sparingly, presumably because of the fear that excessive use might intimidate taxpayers with bona fide disputes who would rather pay the deficiency than incur the risk of a penalty. [Fn. refs. omitted.]"

[6]While we imposed damages in *Coombs v. Commissioner*, 28 B.T.A. 1216 (1933), respondent's requests for damages were denied in *Bateman v. Commissioner*, 34 B.T.A. 351, 370–371 (1936), and *Beckmann Bakers' & Confectioners' Supply Co. v. Commissioner*, 13 B.T.A. 860, 863–864 (1928). See *Hatfield v. Commissioner*, 68 T.C. 895, 899–900 (1977).

persons protesting the Federal tax laws. *Hatfield v. Commissioner*, 68 T.C. 895, 899; *Crowder v. Commissioner*, T.C. Memo. 1978–273, 37 T.C.M. 1173, 47 P–H Memo T.C. par. 78,273 (1978). See also *Gajewski v. Commissioner*, 67 T.C. 181 (1976), affd. in an unpublished opinion (8th Cir., May 2, 1978); *Cupp v. Commissioner, supra; Roberts v. Commissioner, supra*. We noted in *Hatfield v. Commissioner, supra* at 899:

This Court has before it a large number of cases which deserve careful consideration as speedily as possible, and cases [filed to protest the tax laws] of this sort needlessly disrupt our consideration of those genuine controversies. Moreover, by filing cases of this type, the protesters add to the caseload of the Court, which has reached a record size, and such cases increase the expenses of conducting this Court and the operations of the IRS, which expenses must eventually be borne by all of us.

Many citizens may dislike paying their fair share of taxes; everyone feels that he or she needs the money more than the Government. On the other hand, as Justice Oliver Wendell Holmes so eloquently stated: "Taxes are what we pay for civilized society." *Compania de Tabacos v. Collector*, 275 U.S. 87, 100 (1927). The greatness of our nation is in no small part due to the willingness of our citizens to honestly and fairly participate in our tax collection system which depends upon self-assessment. Any citizen may resort to the courts whenever he or she in good faith and with a colorable claim desires to challenge the Commissioner's determination; but that does not mean that a citizen may resort to the courts merely to vent his or her anger and attempt symbolically to throw a wrench at the system. * * *

In *Hatfield* we did not impose the statutorily authorized damages, but rather took the opportunity to warn those individuals who proceed with frivolous cases that such damages might be imposed. A similar warning was issued in *Crowder v. Commissioner, supra,* and *Clippinger v. Commissioner*, T.C. Memo. 1978–107, 37 T.C.M. 484, 47 P–H Memo T.C. par. 78,107 (1978). We believe that the time to act has arrived.

In this case petitioner was repeatedly informed that his constitutional objections were without basis. A judge of the United States District Court ordered petitioner to produce his records to respondent, but petitioner refused. Respondent sent petitioner the full text or citations of *Hatfield v. Commissioner, supra, Roberts v. Commissioner, supra,* and *Fiqueiredo v.*

*Commissioner, supra,* which clearly demonstrate that petitioner's Fifth Amendment claim was frivolous. Petitioner admitted that he had read these cases. Nevertheless, petitioner still refused to produce his books and records. Prior to and at the trial of this case, we repeatedly told petitioner that his claim of privilege was without merit, but he continued to refuse to produce either his books and records or any other evidence. Petitioner's course of conduct, both before he filed his petition in this Court and afterwards, indicates that he filed his petition merely with the intent to delay paying his taxes, and we have so found.

We must determine the amount of damages to impose. Petitioner knew such damages could be imposed.[7] When the costs incurred by this Court and respondent are considered, the maximum damages authorized by law ($500) do not begin to indemnify the United States for the expenses which petitioner's frivolous position has occasioned. Finally, considering the waste of limited judicial and administrative resources caused by petitioner's contumacious actions, even the maximum damages authorized by Congress are wholly inadequate to compensate the United States and other taxpayers. These costs must eventually be borne by all of the citizens who honestly and fairly participate in our tax collection system. *Hatfield v. Commissioner, supra.* We conclude that the maximum damages authorized by law ($500) are appropriate in this case.

> *An appropriate order and a decision for the respondent will be entered.*

Reviewed by the Court.

CHABOT, *J.*, concurs in the holding as to the deficiency but dissents as to the section 6673 issue.

---

[7]Petitioner admitted that he read the *Hatfield* decision several months prior to the trial of this case.