# United States Tax Court

T.C. Memo. 2024-102

YAGOUB TIBIN,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

―――――――

Docket No. 5632-23.                              Filed November 6, 2024.

―――――――

Yagoub Tibin, pro se.

*John R. Neugebauer*, *David A. Indek*, *Abigail E. Glascott*, and *Nicole M. Connelly*, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

JONES, *Judge*: Pursuant to section 6213(a),[1] petitioner, Yagoub Tibin, seeks redetermination of a deficiency in federal income tax determined by the Internal Revenue Service (IRS) for taxable year 2020. After concessions, the issues for decision are whether, for taxable year 2020, Mr. Tibin: (1) failed to report flowthrough income on Schedule C, Profit or Loss From Business, from TM Transportation, LLC (TM Transportation); (2) failed to report income from Lyft, Inc. (Lyft); and (3) is entitled to Schedule C deductions for business expenses associated with TM Transportation, in excess of the amount respondent conceded.

On the basis of the record, we find that Mr. Tibin and TM Transportation had $250,000 of gross income but that Mr. Tibin has

―――――――

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, regulatory references are to the *Code of Federal Regulations*, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure.

[*2] already reported certain amounts thereof.[2] Similarly, we find that Mr. Tibin has already reported the income from Lyft on his tax return, as well as the $12,428 in nonemployee compensation paid by TM Transportation to Mr. Tibin's spouse. Finally, we hold that Mr. Tibin is entitled to Schedule C deductions of $13,078 in excess of the amount respondent conceded.

FINDINGS OF FACT

Before trial, the parties filed a First Stipulation of Facts (Doc. 22) and proposed Exhibits. We incorporate by this reference the First Stipulation of Facts, the stipulated Exhibits, and the Exhibits admitted at trial. Mr. Tibin resided in Pennsylvania when he timely petitioned this Court.

I.    *Background*

Mr. Tibin is the sole owner of, and a driver for, TM Transportation, a single-member limited liability company (LLC) formed in 2018. TM Transportation contracts with private and governmental entities, including other transportation companies, to provide transportation for individuals attending medical appointments in the Philadelphia area.

During taxable year 2020, TM Transportation employed three part-time drivers who, along with Mr. Tibin, transported patients to their appointments. The weekly passenger volume fluctuated because of the effects of the COVID-19 pandemic; some weeks TM Transportation had as few as 10 clients, while other weeks it had as many as 80 clients. TM Transportation owned five vehicles during taxable year 2020, including four vehicles in regular service and one backup vehicle. TM Transportation used several types of vans in the Ford E-Series, including Ford E-150, E-250, and E-350 vans, some of which were handicap accessible vans with high roofs. At the end of each shift, the drivers took their vehicles home.

In 2020, TM Transportation contracted with AMR Holdco, Inc., d.b.a. American Medical Response (AMR). As TM Transportation's sole owner, Mr. Tibin provided AMR with a Form W–9, Request for Taxpayer

---

[2] For reasons explained more fully in the Order issued concurrently with this Opinion, the Court will vacate in part its April 25, 2024, Order granting respondent's Motion to Conform the Pleadings to the Proof, and we will deny in part respondent's Motion.

**[\*3]** Identification Number and Certification, on which he checked the "Individual/sole proprietor or single-member LLC" box and wrote down his Social Security number instead of TM Transportation's employer identification number. AMR reported gross payments of $184,489 on Form 1099–MISC, Miscellaneous Income, for taxable year 2020. Additionally, TM Transportation also contracted with Sarah Car Care, Inc. (SCC), to provide transportation services to customers. TM Transportation used the same vehicles and insurance coverage for its contract with AMR and its contract with SCC.

II. *Mr. Tibin's Tax Return Filings for Taxable Year 2020*

A. *Unfiled Form 1120*

An accountant, Louis Orji, prepared Mr. Tibin's and TM Transportation's income tax returns for taxable year 2020. Mr. Orji prepared Form 1120, U.S. Corporation Income Tax Return, to report TM Transportation's income and expenses. Mr. Orji prepared the returns solely on the basis of the information Mr. Tibin provided to him and did not independently verify any of the information by reviewing bank statements or other records.

Mr. Tibin presented a copy of TM Transportation's corporate tax return showing gross receipts of $250,000 for taxable year 2020. Notwithstanding its preparation, the return was not filed with the IRS. As Mr. Orji explained, the IRS rejected the return because the return did not include Form 8832, Entity Classification Election, electing C corporation tax treatment for TM Transportation, thus rendering the return invalidly prepared.

On the unfiled Form 1120, Mr. Tibin purported to report $252,000 of expenses related to TM Transportation. The breakdown of these expenses for taxable year 2020 is as follows:

| Category | Amount |
| --- | --- |
| Compensation of Officers | $103,489 |
| Repairs and Maintenance | 69,611 |
| Rents | 78,900 |
| Total | $252,000 |

We will briefly discuss each of these expenses.

**[*4]**        1.        *Compensation of Officers*

On the unfiled Form 1120, TM Transportation asserted an expense of $103,489 for compensation paid to its workers. Form 1125–E, Compensation of Officers, was attached to the unfiled return; it listed the compensation breakdown per worker. According to this form, Mr. Tibin paid himself $55,000. TM Transportation paid the rest of the compensation to three workers, consisting of $17,525 to Mohamed Yagoub, $18,536 to Hamed Ishaq, and $12,428 to Mr. Tibin's spouse, Laila Osman.[3]

2.        *Repairs and Maintenance*

TM Transportation incurred expenses to repair and maintain its vehicles. On the unfiled Form 1120, TM Transportation asserted expenses of $69,611 for taxable year 2020. At trial, Mr. Tibin testified about the cost of replacing brakes and brake rotors, among other repairs. Additionally, Mr. Tibin testified that he paid some expenses in cash, including $1,300 paid to rebuild a transmission. However, aside from the bank statements provided at trial, Mr. Tibin did not maintain any receipts or other records to substantiate the repair and maintenance expenses.

3.        *Rents*

TM Transportation asserted rent expenses of $78,900 as a deduction on the unfiled Form 1120. Mr. Tibin has leased an office space in a residential building since 2017, one year before he created TM Transportation. Mr. Tibin used the office space for work related to TM Transportation, and he stored TM Transportation's backup vehicle there. Mr. Tibin did not produce a rental agreement or any other nontestimonial evidence to corroborate the reported expense.

B.        *Form 1040*

In addition to the unfiled Form 1120, Mr. Orji also prepared a Form 1040, U.S. Individual Income Tax Return, and attachments for Mr. Tibin and Ms. Osman. Although AMR issued Form 1099–MISC to Mr. Tibin reporting income of $184,489, Mr. Tibin did not report the entire amount on his Form 1040. Rather, Mr. Tibin, under the

---

[3] Although Mr. Tibin and Ms. Osman filed a joint Form 1040, U.S. Individual Income Tax Return, and the IRS issued a Notice of Deficiency in both names, Ms. Osman is not a party to this case.

**[\*5]** impression that TM Transportation had filed a valid Form 1120, reported the amounts paid by TM Transportation to himself and Ms. Osman, among other amounts, entirely (albeit somewhat improperly) on a Schedule C that corresponds to TM Transportation's work for SCC (SCC Schedule C).[4]

Mr. Tibin reported $71,045 of gross receipts on the SCC Schedule C. As illuminated by the testimony at trial and the worksheets attached to the Form 1040, the amount of gross receipts reported on the SCC Schedule C comprises the following amounts:

| Category | Amount |
|---|---|
| TM Transportation—Pay received by Mr. Tibin | $55,000 |
| Lyft—Form 1099–NEC, Nonemployee Compensation | 1,091 |
| Uber—Form 1099–NEC | 2,526 |
| TM Transportation—Form 1099–NEC received by Ms. Osman | 12,428 |
| Total | $71,045 |

Mr. Tibin reported expenses of $45,738 on the SCC Schedule C that were additional to the amounts reported on the unfiled Form 1120. On the SCC Schedule C, Mr. Tibin reported the following expenses:

| Category | Amount |
|---|---|
| Insurance | $2,400 |
| Rent or Lease | 28,200 |
| Repairs and Maintenance | 2,514 |
| Other Expenses | |
| Gasoline | 10,829 |
| Carwash | 685 |
| Cell Phone/Internet | 1,110 |
| Total | $45,738 |

III. *IRS Examination and Notice of Deficiency*

A. *Notice of Deficiency*

After examination of Mr. Tibin's jointly filed return, the IRS issued a Notice of Deficiency, dated February 6, 2023, determining a deficiency of $40,722, and an accuracy-related penalty of $8,144 under section 6662(a) and (b)(2) for an underpayment of tax required to be shown on a return attributable to a substantial understatement of

---

[4] The Court notes that if TM Transportation had made a valid C corporation election, the full amounts paid to Mr. Tibin and Ms. Osman would not generally be combined and reported on a Schedule C attached to the joint Form 1040.

[*6] income tax.[5] The Notice of Deficiency identified discrepancies between the information received from third parties and the income reported on Mr. Tibin's tax return. The Notice of Deficiency determined that Mr. Tibin reported $58,617 of the $184,489 received from AMR; that Mr. Tibin failed to report $125,872 received from AMR; that $12,428 of nonemployee compensation paid by TM Transportation to Ms. Osman was reported; and that Mr. Tibin failed to report $1,091 of income received from Lyft.[6]

B.    *Tax Court Petition and Trial*

On March 29, 2023, Mr. Tibin filed a Petition with this Court seeking redetermination of the deficiency. In support of his Petition, Mr. Tibin asserted that AMR paid $184,489 to TM Transportation and that he reported that payment to the IRS on a separate return his accountant prepared for TM Transportation.

At the conclusion of trial, and by Order dated March 22, 2024, the Court directed respondent to file a seriatim opening brief on or before May 20, 2024, and for Mr. Tibin to file an answering brief on or before June 20, 2024. *See* Rule 151(b)(2). Additionally, the Court afforded respondent the opportunity to file, on or before April 22, 2024, a Motion for Leave to Amend Pleadings accompanied by a Motion to Amend Pleadings. The Court also directed Mr. Tibin to file a response to respondent's Motion to Amend Pleadings on the same day he filed his seriatim answering brief. Further, the Court warned Mr. Tibin that if he failed to file an answering brief the Court would deem his opportunity to file a brief waived and the Court would consider only the record and respondent's brief in its deliberations.

On April 22, 2024, respondent filed a Motion for Leave to File First Amendment to Answer (Doc. 30), lodged his First Amendment to Answer (Doc. 31), and filed a Motion to Conform the Pleadings to the

---

[5] Respondent conceded that Mr. Tibin is not liable for the accuracy-related penalty under section 6662(a) and (b)(2).

[6] The Court also notes that the Notice of Deficiency showed negative $2,243 as Mr. Tibin's taxable income under the "shown on return" column, although the taxable income per the stipulated return was $3,847. The difference appears to be an adjustment of $6,090, which is related to the unemployment compensation reported (and then excluded from income) on the copy of the return provided by Mr. Tibin's accountant. Although this computational adjustment is not at issue here, the IRS determined that Mr. Tibin is not entitled to the unemployment compensation exclusion from income as his modified adjusted gross income exceeded $150,000. *See* American Rescue Plan Act of 2021, Pub. L. No. 117-2, § 9042(a), 135 Stat. 4, 122.

**[\*7]** Proof (Doc. 32). Because Mr. Tibin did not file a seriatim answering brief, a motion for extension of time to file a seriatim answering brief, or a response to respondent's Motion for Leave to File First Amendment to Answer or Motion to Conform the Pleadings to the Proof, we find that Mr. Tibin has waived his opportunity to file a brief. Accordingly, and pursuant to the warning the Court issued to Mr. Tibin, the Court has considered only the record and respondent's brief.

## OPINION

I. *Preliminary Matters*

A. *Burden of Proof*

The determinations in a Notice of Deficiency bear a presumption of correctness, *see, e.g.*, *Welch v. Helvering*, 290 U.S. 111, 115 (1933), and the taxpayer generally bears the burden of proving them erroneous, *see* Rule 142(a)(1). The taxpayer also bears the burden of proving entitlement to any deduction claimed. *INDOPCO, Inc. v. Commissioner*, 503 U.S. 79, 84 (1992). Thus, a taxpayer claiming a deduction on a federal income tax return must demonstrate that the deduction is provided for by statute and must maintain records sufficient to enable the Commissioner to determine the correct tax liability. *See* § 6001; Treas. Reg. § 1.6001-1(a); *see also Hradesky v. Commissioner*, 65 T.C. 87, 89–90 (1975), *aff'd per curiam*, 540 F.2d 821 (5th Cir. 1976).

In certain instances, however, the Commissioner bears the burden of proof. Notwithstanding, Mr. Tibin has not argued or established that the burden of proof has shifted to respondent pursuant to section 7491(a), and therefore the burden of proof largely remains with Mr. Tibin. *See, e.g.*, *Adler v. Commissioner*, T.C. Memo. 2010-47, 2010 WL 934267, at \*6, *aff'd*, 433 F. App'x 736 (3d Cir. 2011). But because respondent raised new issues in his First Amendment to Answer, respondent bears the burden of proof as to those issues. *See* Rule 142(a)(1) ("[I]n respect of any new matter, increases in deficiency, and affirmative defenses, pleaded in the answer, [the burden of proof] shall be upon the respondent.").

B. *Credibility of Witnesses*

In deciding whether a taxpayer has carried his burden of proof, witness credibility is an important consideration. *Ishizaki v. Commissioner*, T.C. Memo. 2001-318, 2001 WL 1658189, at \*7. "[T]he distillation of truth from falsehood . . . is the daily grist of judicial life."

[*8] *Diaz v. Commissioner*, 58 T.C. 560, 564 (1972). "As a trier of fact, it is our duty to listen to the testimony, observe the demeanor of the witnesses, weigh the evidence, and determine what we believe." *Kropp v. Commissioner*, T.C. Memo. 2000-148, 2000 WL 472840, at *3.

Overall, we found Mr. Tibin's testimony to be truthful and candid. Additionally, Mr. Orji showed familiarity with the prepared tax returns.[7] Notwithstanding his credible testimony, we found his preparation of the returns wanting for the level of expertise expected of an accounting professional.

We will now consider the issues of gross income and deductions.

## II.     *Gross Income*

Gross income includes all income from whatever source derived, including gross income derived from business. *See* § 61(a)(2); *see also Commissioner v. Glenshaw Glass Co.*, 348 U.S. 426, 429–31 (1955). In cases of unreported income, "the Commissioner must establish a 'minimal evidentiary showing' connecting the taxpayer with the alleged income-producing activity," *Walquist v. Commissioner*, 152 T.C. 61, 67 (2019) (quoting *Blohm v. Commissioner*, 994 F.2d 1542, 1549 (11th Cir. 1993), *aff'g* T.C. Memo. 1991-636); *see also Anastasato v. Commissioner*, 794 F.2d 884, 887 (3d Cir. 1986) (citing *Gerardo v. Commissioner*, 552 F.2d 549, 554 (3d Cir. 1977), *aff'g in part, rev'g in part* T.C. Memo. 1975-341), *vacating and remanding* T.C. Memo. 1985-101, "or demonstrate that the taxpayer actually received unreported income," *Walquist*, 152 T.C. at 67 (citing *Edwards v. Commissioner*, 680 F.2d 1268, 1270 (9th Cir. 1982)). "Once the Commissioner makes the required threshold showing, the burden shifts to the taxpayer to prove by a preponderance of the evidence that the Commissioner's determinations are arbitrary or erroneous." *Id.* at 67–68 (first citing *Helvering v. Taylor*, 293 U.S. 507, 515 (1935); and then citing *Tokarski v. Commissioner*, 87 T.C. 74 (1986)). The IRS may rely on a third-party income report if the taxpayer does not raise a reasonable dispute about its accuracy. *See* § 6201(d).

### A.     *Amount Determined in the Notice of Deficiency*

In the Notice of Deficiency, respondent determined that Mr. Tibin and TM Transportation received gross income of $184,489 from AMR, of which he failed to report $125,872. Further, respondent determined that Mr. Tibin received and failed to report $1,091 of income from Lyft. These

---

[7] Mr. Orji appeared only in the capacity of a witness.

**[\*9]** items bear a presumption of correctness. *See Welch v. Helvering*, 290 U.S. at 115.

Respondent has met his threshold burden by showing some minimal evidentiary connection to the unreported income. Respondent has provided a copy of Form 1099–MISC reflecting the amounts paid by AMR to Mr. Tibin and TM Transportation. Mr. Tibin has not argued that the amounts are incorrect. Rather, he asserts that the amounts were not received directly by him but instead received by TM Transportation.

However, TM Transportation is a domestic entity with a single owner; thus, it is deemed a disregarded entity for tax purposes unless an election is filed. *See* Treas. Reg. § 301.7701-3(b)(1). If an entity is disregarded, its activities are treated in the same manner as those of a sole proprietorship. Treas. Reg. § 301.7701-2(a). Accordingly, Schedule C is used to satisfy the entity's tax reporting requirements unless an election opting out of the default status was filed. Such an election would allow Mr. Tibin to treat the LLC as a C corporation for income tax purposes. *See* Treas. Reg. § 301.7701-3(c)(1)(i).

The testimony and evidence at trial establish that TM Transportation did not file Form 8832 with Form 1120, thus leading the IRS to reject the return. Because a valid election was not filed, TM Transportation is treated as a disregarded entity for federal tax purposes, *see* Treas. Reg. § 301.7701-2(a); *see also Comensoli v. Commissioner*, T.C. Memo. 2009-242, 2009 WL 3425679, at \*3, *aff'd*, 422 F. App'x 412 (6th Cir. 2011), and Mr. Tibin, as its sole member, is required to report on his federal income tax return any income (or loss) attributable to TM Transportation. Therefore, respondent has met his initial burden.

Mr. Tibin does not contest that TM Transportation received the amounts reported on the Form 1099–MISC issued by AMR. Accordingly, we sustain the Commissioner's determination set forth in the Notice of Deficiency that Mr. Tibin and TM Transportation had unreported income of $125,872 for taxable year 2020. Further, the parties have stipulated that Mr. Tibin received $1,091 of income from Lyft during taxable year 2020, and we agree. However, the income received from Lyft was already reported on Mr. Tibin's SCC Schedule C, *see supra* p. 5, and therefore we will not sustain respondent's determination that Mr. Tibin had an additional $1,091 of unreported income from Lyft for taxable year 2020.

[*10] B.    *Amounts Pleaded in Respondent's First Amendment to Answer*

As to the amount of gross income in excess of those amounts in the Notice of Deficiency, respondent bears the burden of proof. *See* Rule 142(a)(1). First, the testimony and evidence at trial establish that TM Transportation received $250,000 of income during taxable year 2020. The parties stipulated TM Transportation's unfiled Form 1120 for taxable year 2020, which reflects that TM Transportation had income of $250,000. Additionally, Mr. Tibin testified that $250,000 was the total income for TM Transportation in taxable year 2020. Accordingly, respondent has met his burden of proving that TM Transportation received $65,511 of gross income in excess of the amounts already reported and determined in the Notice of Deficiency (i.e., $184,489).

However, to the extent that respondent asserts an increased deficiency on the basis that the Notice of Deficiency incorrectly stated that $58,617 of income was reported on the Form 1040, and that the correct amount was zero, we cannot agree. Respondent contends that Mr. Tibin failed to report on his 2020 Form 1040 any amounts that he received from his business activities because "the income reported on . . . TM Transportation's Form 1120 should have been reported on [Mr. Tibin's] Schedule C."

As previously stated, the burden of proof with respect to any increase in deficiency pleaded in an answer shall be upon the Commissioner. *See* Rule 142. On that basis respondent has not met his burden of proving the additional deficiency asserted with respect to the $58,617.[8] Mr. Tibin has presented evidence that the $58,617 at issue was included in the $71,045 reported on the SCC Schedule C attached to the return (although the amounts were reported somewhat improperly, they were nevertheless reported).

Specifically, Mr. Orji testified that "everything was put to th[e] Schedule C" included with Mr. Tibin's return, which includes the $55,000 paid to Mr. Tibin and the $12,428 paid to Ms. Osman. The total amount of gross income reported on Line 1 of the Schedule C was $71,045. The Form 1040 provided by Mr. Orji is nearly identical to the stipulated Form 1040 for taxable year 2020. However, the Form 1040 provided by Mr. Orji also includes the additional information included

---

[8] The Court notes that paragraph 7(a), (c), (d), (h), (o), and (p) of respondent's First Amendment to Answer are inconsistent with the evidence presented at trial.

**[\*11]** in the worksheets attached thereto (Exhibit 1010–P). The worksheets attached to the Form 1040 provided by Mr. Orji show that the total amount of gross receipts reported on the SCC Schedule C, $71,045, comprises the $55,000 paid to Mr. Tibin, the $12,428 paid to Ms. Osman, the $2,526 paid by Uber, and the $1,091 paid by Lyft. *See* Ex. 1010–P at 26–31.

In the Notice of Deficiency respondent reflected the $71,045 of SCC Schedule C gross receipts in two places: (1) $12,428 that was reported on the Form 1040 as nonemployee compensation paid by TM Transportation to Ms. Osman; and (2) $58,617 as the amount that Mr. Tibin reported of the $184,489 paid by AMR to TM Transportation.[9] Ultimately, TM Transportation had gross receipts of $250,000 (including the $184,489 that AMR paid to TM Transportation). From this $250,000, TM Transportation paid $55,000 to Mr. Tibin and $12,428 to Ms. Osman. Taken together these two amounts, $55,000 + $12,428, account for $67,428 of the $71,045 reported as gross receipts on the SCC Schedule C.

As detailed above, certain amounts paid by AMR to TM Transportation, and then paid by TM Transportation to Mr. Tibin and Ms. Osman have already been reported on the return; respondent has not met his burden to assert an increased deficiency as to the $58,617. The parties must take heed during the forthcoming Rule 155 process to avoid duplication of these sources of income.

III.    *Deductions*

A.    *Analytical Framework*

Having resolved the issue of unreported income, we now turn to whether Mr. Tibin is entitled to deduct any of his purported business expenses, and if so, the amounts of the deductions he can claim. Section 162(a) permits a deduction for ordinary and necessary expenses paid or incurred in carrying on a trade or business during the taxable year. An "ordinary" expense is one that is common and acceptable in a particular business industry. *Welch v. Helvering*, 290 U.S. at 113–14. The main function of the word "ordinary" in section 162(a) is to clarify the distinction between expenses that are currently deductible and expenses that are capital. *Commissioner v. Tellier*, 383 U.S. 687, 689–90 (1966). A "necessary" expense under section 162(a) is an expense that is

---

[9] To clarify, Mr. Tibin reported these amounts as gross receipts on the SCC Schedule C.

**[\*12]** appropriate and helpful in carrying on the trade or business. *Heineman v. Commissioner*, 82 T.C. 538, 543 (1984). The taxpayer must show that a reported business expense was incurred primarily for business rather than personal reasons and that there was a proximate relationship between the expense and the business. *Walliser v. Commissioner*, 72 T.C. 433, 437 (1979).

As set forth above, the taxpayer bears the burden of proving entitlement to any deduction claimed. *INDOPCO, Inc. v. Commissioner*, 503 U.S. at 84. "Claiming a deduction on an income tax return is not sufficient to substantiate the underlying expense." *Cardulla v. Commissioner*, T.C. Memo. 2023-89, at \*18 (citing *Wilkinson v. Commissioner*, 71 T.C. 633, 639 (1979)). "Rather, an income tax return 'is merely a statement of the [taxpayer's] claim . . . ; it is not presumed to be correct.'" *Id.* (alterations in original) (quoting *Roberts v. Commissioner*, 62 T.C. 834, 837 (1974)); *see also Wilkinson*, 71 T.C. at 639 ("The fact that a return is signed under penalty of perjury is not sufficient to substantiate deductions claimed on it." (citing *Roberts*, 62 T.C. at 837, 839)). Further, "[a] taxpayer's self-serving declaration is generally not a sufficient substitute for records." *Fine v. Commissioner*, T.C. Memo. 2013-248, at \*4. In other words, there must be sufficient evidence in the record to permit the Court to conclude that a deductible expense was paid or incurred in at least the amount allowed. *See Williams v. United States*, 245 F.2d 559, 560 (5th Cir. 1957).

When a taxpayer claims a deduction but cannot fully substantiate the underlying expense, the Court in certain circumstances may approximate the allowable amount, "bearing heavily . . . upon the taxpayer whose inexactitude is of his own making." *Cardulla*, T.C. Memo. 2023-89, at \*18 (quoting *Cohan v. Commissioner*, 39 F.2d 540, 543–44 (2d Cir. 1930)); *see also Clark v. Commissioner*, 253 F.2d 745, 750 (3d Cir. 1958), *aff'g in part, rev'g in part and remanding* T.C. Memo. 1956-176. But the Court is not required to guess at a number; rather "we must have some basis upon which an estimate may be made." *Polyak v. Commissioner*, 94 T.C. 337, 346 (1990); *Vanicek v. Commissioner*, 85 T.C. 731, 743 (1985); *Cardulla*, T.C. Memo. 2023-89, at \*18. However, under sections 274(d)(3) and 280F(d)(4), certain categories of deductions, including certain vehicle expenses, are subject to strict substantiation requirements.[10] A Court may not apply the *Cohan* rule to approximate expenses covered by section 274(d). *See*

---

[10] Though the parties did not explicitly raise this issue at trial, respondent referenced section 274 in his Posttrial Opening Brief. *See Brief for Resp.* at 26.

[*13] *Sanford v. Commissioner*, 50 T.C. 823, 827–28 (1968), *aff'd per curiam*, 412 F.2d 201 (2d Cir. 1969).

Nevertheless, the section 274(d) requirements do not apply with respect to expenses reported for property used in the trade or business of transporting persons for compensation. *See* § 280F(d)(4)(B); *see also, e.g.*, *Howard v. Commissioner*, T.C. Memo. 2015-38, at *11–12 (holding that a taxpayer's expenses incurred with respect to a truck used in long-distance trucking were not subject to heightened substantiation requirements of section 274(d)(3)); *Baker v. Commissioner*, T.C. Memo. 2014-122, at *6 (holding that a taxpayer's expenses incurred with respect to a Mack Truck tractor used to haul tank trailers were not subject to heightened substantiation requirements of section 274(d)(3)). *But see, e.g.*, *Nurumbi v. Commissioner*, T.C. Memo. 2021-79, at *16–17 (holding that a taxpayer's expenses incurred with respect to SUVs or passenger trucks used in connection with the operation of a ride-sharing business through an online platform were subject to heightened substantiation requirements of section 274(d)(3) because he failed to prove that he did not use the vehicles for personal purposes).

B.     *TM Transportation's Allowable Schedule C Deductions*

On brief, respondent concedes that Mr. Tibin is entitled to deduct the following Schedule C expenses for TM Transportation:

| Expense | Conceded |
|---|---|
| Gasoline | $5,255 |
| Car Repairs | 2,927 |
| Office Costs | 640 |
| Vehicle and Driver Registration | 342 |
| Insurance | 38,432 |
| Compensation Paid to Mohamed Yagoub | 17,525 |
| Compensation Paid to Mr. Ishaq | 18,536[11] |
| Total | $83,655[12] |

---

[11] Form 1125–E, attached to the unfiled Form 1120, reflects that Mr. Tibin was paid $55,000, Mohamed Yagoub was paid $17,525, Mr. Ishaq was paid $18,536, and Ms. Osman was paid $12,428. Mr. Tibin also provided Forms 1099 allegedly issued to these employees. However, the Forms 1099 purportedly issued by TM Transportation reflect a lower amount of nonemployee compensation paid to Mr. Ishaq of $13,233. On brief respondent noted this discrepancy, but "[t]o be most favorable to Petitioner, respondent used the larger amounts stated on the Form 1120."

[12] The Court notes that the sum of the amounts in the table is $83,657; this discrepancy is solely attributable to rounding. The unrounded sum of these numbers

**[\*14]** However, respondent avers that Mr. Tibin has failed to substantiate any deduction other than the $83,655 already conceded. Because the vehicles at issue were exclusively used in a trade or business of providing transportation services to unrelated persons for hire, the vehicles are not "listed property" as defined in section 280F(d)(4)(A)(ii). *See also* 280F(d)(4)(B); *Howard*, T.C. Memo. 2015-38, at \*11–12; *Baker*, T.C. Memo. 2014-122, at \*6. Accordingly, the vehicle-related deductions are not subject to the strict substantiation requirements of section 274(d). The Court can apply the *Cohan* rule to estimate the amount of the allowable deduction if there exists a sufficient basis for doing so. We will discuss each category of deduction in turn.

### 1. *Gasoline*

At trial, Mr. Tibin testified that TM Transportation incurred regular expenses for gasoline, ranging from $40 to $80 per day. However, Mr. Tibin's testimony was unclear as to whether that amount is per vehicle per day, or whether it is the cumulative expense incurred for all vehicles per day. Given this ambiguity, and bearing heavily against Mr. Tibin's inexactitude, we construe his testimony to mean that TM Transportation incurred up to $80 per day of gasoline expenses for all vehicles.

The bank statements provided by Mr. Tibin show numerous charges at gas stations, but the charges do not specify what was purchased. The business purpose of such expenses, if for gas only, is readily apparent. Assuming that the charges are exclusively for gasoline to operate the fleet of vans and not for other purchases at gas stations, the bank statements evidence approximately $5,283 of purchases for taxable year 2020. In applying the *Cohan* rule, *see Cohan v. Commissioner*, 39 F.2d at 544, and weighing the evidence presented at trial, we find that Mr. Tibin is not entitled to a deduction for gasoline exceeding the $5,255 that respondent has already conceded.

### 2. *Maintenance and Repairs*

Similarly, at trial Mr. Tibin testified that TM Transportation frequently incurred maintenance expenses for the fleet of vehicles, including expenses related to the replacement of brakes and brake rotors, among others. Mr. Tibin also testified that he paid some expenses

---

totals $83,655.32, which the Court also notes exceeds the $83,655.12 respondent has conceded.

**[\*15]** in cash, including $1,300 paid to rebuild a transmission. On brief, respondent conceded, solely on the basis of the bank statements Mr. Tibin provided, that TM Transportation is entitled to deduct maintenance expenses of $2,927 for taxable year 2020. Upon review by the Court, the bank statements evidence $2,867 of likely maintenance expenses, and we find that the bank statements do not evidence entitlement to any deduction above the $2,927 that respondent has already conceded.

However, at trial Mr. Tibin also testified that he paid $1,300 in cash to rebuild a transmission. He further testified that he did not have a receipt for the expense. We found Mr. Tibin's testimony credible. However, in applying the *Cohan* rule, we bear heavily against a taxpayer whose inexactitude is of his own making. *See Cohan v. Commissioner*, 39 F.2d at 544. Finding that Mr. Tibin incurred a cash expense to repair a transmission but lacking any documentation to support his testimony, we conclude that Mr. Tibin is entitled to a deduction of $650 exceeding the amount that respondent has already conceded.

### 3. *Office Supplies*

At trial, Mr. Tibin testified that TM Transportation incurred expenses for office supplies during taxable year 2020. This amount included cleaning supplies and disinfectant required for use during the COVID-19 pandemic. Mr. Tibin estimates that he spent approximately $1,000 on cleaning supplies during taxable year 2020. The bank statements provided by Mr. Tibin show several charges at stores such as Staples and Home Depot. Assuming these charges are exclusively for office supplies relating to the operation of TM Transportation, the bank statements evidence charges of approximately $640, which is the same amount that respondent has already conceded. Applying the *Cohan* rule, *id.*, we find that Mr. Tibin is not entitled to a deduction for office supplies exceeding the $640 that respondent has already conceded.

### 4. *Registration*

At trial Mr. Tibin testified that TM Transportation incurred expenses for vehicle and driver registration. These include, inter alia, costs of background checks for the drivers, defensive driving courses, drug tests, CPR certifications, and first aid certifications totaling approximately $180 per year for each of the three drivers. Additionally, some drivers had to receive an annual certification to operate a vehicle

[*16] with a wheelchair lift, which cost approximately $60. TM Transportation employed three part-time drivers during taxable year 2020 and, according to Mr. Tibin's testimony, incurred an expense of approximately $600 per year.

The bank statements provided by Mr. Tibin show several transactions with Pennsylvania Driver and Vehicle Services and the Commonwealth of Pennsylvania, as well as charges for criminal background checks. These transactions totaled approximately $342, which is the amount that respondent has already conceded. Absent additional receipts or evidence reflecting the expenses incurred, *see id.*, we find that Mr. Tibin is not entitled to a deduction for registration expenses exceeding the $342 that respondent has already conceded.

### 5. *Insurance*

At trial, Mr. Tibin testified about the insurance expense incurred annually by TM Transportation. Mr. Tibin estimated that he paid approximately $50,000 per year in insurance premiums for TM Transportation. He also provided a copy of two insurance policies in effect at various times throughout taxable year 2020. The first insurance policy, issued by American Country Insurance Co., was in effect from August 13, 2019, through August 13, 2020, with a total policy premium of $47,089. The second insurance policy, issued by First Chicago Insurance Co., was in effect from August 13, 2020, through August 13, 2021, with a total policy premium of $24,295. Extrapolating the costs of these policies incurred during taxable year 2020, respondent conceded $38,432 of insurance expenses. The insurance policies submitted into evidence support a deduction of $38,432, and we find that Mr. Tibin is not entitled to a Schedule C deduction exceeding the amount that respondent has already conceded.

### 6. *Compensation*

On his unfiled Form 1120, Mr. Tibin asserted an expense of $103,489 for compensation to officers. This includes $55,000 paid to himself, $17,525 paid to Mohamed Yagoub, $18,536 paid to Mr. Ishaq, and $12,428 paid to Ms. Osman. On brief respondent conceded that Mr. Tibin is entitled to deduct $17,525 for the amount paid to Mohamed Yagoub and $18,536 for the amount paid to Mr. Ishaq. However, respondent did not concede the amounts paid to Mr. Tibin or Ms. Osman because "neither Petitioner nor his wife included the receipt of those

[*17] wages on their Form 1040," and therefore, respondent did "not include them as business expenses."

With respect to the amount paid to Mr. Tibin, the $55,000 he deducted was paid as a salary to himself. The $55,000 was reported on the Form 1040 for taxable year 2020, but the amount is part of the business profit of the sole proprietorship reported on Schedule C and therefore is not deductible. However, with respect to the $12,428 paid to Ms. Osman, we find that Mr. Tibin is entitled to a Schedule C deduction for TM Transportation in the amount of the nonemployee compensation paid to Ms. Osman, a deduction of $12,428. The parties stipulated that Mr. Tibin was the sole owner of TM Transportation, an LLC. Because TM Transportation did not file a Form 8832 to elect alternative treatment, TM Transportation is considered a disregarded entity and treated in the same manner as a sole proprietorship. *See* Treas. Reg. §§ 301.7701-2(a), 301.7701-3(b)(1). Therefore, any payment to Ms. Osman would be a deductible expense and not considered part of the net profit (or loss) reported on the SCC Schedule C. *See* § 162.

Additionally, respondent did not consider the amount paid to Ms. Osman a business expense because of his erroneous view that the amount was not included on the Form 1040. But, as previously discussed, TM Transportation issued Ms. Osman a Form 1099–NEC, and later issued a corrected Form 1099–NEC reflecting that $12,428 was paid to Ms. Osman.[13] The $12,428 paid to Ms. Osman was then

---

[13] At trial, respondent's counsel stated that the Forms 1099–NEC issued by TM Transportation were not sent to the IRS. With respect to the amounts related to Mohamed Yagoub and Mr. Ishaq, respondent conceded the amount of the deductions, and therefore the point is moot.

With respect to Ms. Osman, the assertion by respondent's counsel fails for two reasons. First, respondent's counsel did not present any evidence in support of such a proposition and did not maintain such an assertion on brief; therefore, respondent has waived the argument. *See, e.g.*, *Amos v. Commissioner*, T.C. Memo. 2022-109, at *9 n.8, *aff'd per curiam*, No. 23-10532, 2024 WL 1406646 (11th Cir. Apr. 2, 2024); *Marks v. Commissioner*, T.C. Memo. 2018-49, at *8.

Second, even if respondent has not waived the argument, we find respondent's argument unavailing. It is true that an unfiled Form 1099–NEC does not substantiate a reported business expense absent additional evidence. *See Parker v. Commissioner*, T.C. Memo. 2012-357, at *15–16; *Weatherly v. Commissioner*, T.C. Memo. 2011-206, 2011 WL 3794241, at *2 (finding that a taxpayer who produced Forms 1099–MISC that were not filed with the IRS and who did not produce any supporting documentation had not substantiated their reported contract labor expenses). Even if the Form 1099–NEC was not filed with the IRS, we nevertheless find the deduction for the pay to Ms. Osman is appropriate. The amount paid to Ms. Osman was reported on

**[\*18]** reported on the joint Form 1040 filed by Mr. Tibin and Ms. Osman. Accordingly, we find that Mr. Tibin is entitled to a Schedule C deduction of $12,428 exceeding the amounts respondent already conceded.

### 7.    *Office Rent or Lease*

On the unfiled Form 1120, Mr. Tibin asserted a business expense of $78,900 for rent. At trial, Mr. Tibin testified that he has maintained an office for TM Transportation in a residential building in Philadelphia. Mr. Tibin also testified that he stored TM Transportation's backup vehicle at the office and that he has maintained the office since 2017, one year before he created TM Transportation.

However, the Court lacks sufficient information or substantiation regarding the rent or lease expense. At trial, Mr. Tibin was unable to furnish a copy of the rental agreement for the residential office or provide any other documentary evidence supporting the claimed business deduction. When asked, Mr. Tibin did acknowledge that he asserted $78,900 for rent or lease expense on the unfiled Form 1120, but his testimony went no further; Mr. Tibin did not testify as to the amount of the expense actually incurred by TM Transportation. The Court may estimate the expense incurred under the *Cohan* rule, *see Cohan v. Commissioner*, 39 F.2d at 543–44, but the Court must have some reasonable basis for such an estimate, *see Vanicek v. Commissioner*, 85 T.C. at 742–43. The business deduction asserted on the unfiled Form 1120 is not sufficient to substantiate the underlying expense. *See Wilkinson*, 71 T.C. at 639. Accordingly, having no reasonable basis to estimate the rent or lease expense, we cannot find that Mr. Tibin paid $78,900 (or any amount, for that matter) for rent.

### IV.    *Conclusion*

For the foregoing reasons, we hold that Mr. Tibin did not report his total income from TM Transportation on his individual tax return. We hold that TM Transportation received $250,000 in gross revenue, but Mr. Tibin had already reported certain amounts thereof. Similarly, we hold that Mr. Tibin has already reported income from Lyft on his tax

---

Mr. Tibin and Ms. Osman's joint Form 1040 for taxable year 2020. This fact is further supported by respondent's own Notice of Deficiency, which (correctly) reflects that $12,428 of nonemployee compensation was paid by TM Transportation and subsequently reported on the joint Form 1040 filed for taxable year 2020. The additional evidence in the record has adequately substantiated the reported expense regarding the compensation paid to Ms. Osman.

**[\*19]** return, as well as the $12,428 in nonemployee compensation paid by TM Transportation to Ms. Osman. Further, we hold that Mr. Tibin is entitled to $13,078 in deductions in excess of the amount respondent conceded.

We have considered the parties' remaining arguments, and to the extent not discussed above, conclude those arguments are irrelevant, moot, or without merit.

To reflect the foregoing,

*Decision will be entered under Rule 155.*